13679

CATHCART v. CITY OF COLUMBIA *ET AL.*

(170 S. E., 435)

*Mr. C. T. Graydon* for plaintiff.

*Messrs. Paul A. Cooper, D. W. Robinson, Jr.,* and *Reed, Hoyt & Washburn,* for defendants,.

July 29, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The plaintiff, a citizen and taxpayer of the City of Columbia, instituted these proceedings in the original jurisdiction of the Court for the purpose of having declared unconstitutional two Acts, No. 366 and No. 465, passed by the legislature at its 1933 session.

The following is disclosed by the pleadings and agreed statement of facts: The City of Columbia desires and proposes to erect a municipal stadium, without its corporate limits, on lands to be donated for that purpose by certain interested citizens. For the accomplishment of the proposal,

two plans are suggested, the first of which is as follows: Under the provisions of Act No. 366, the city would form a business corporation, to be known as the "Columbia Stadium Company." All the stock of this company would be owned by the city which, in order to obtain the necessary funds for the erection of the stadium, might have the corporation obtain a loan, by the issuance of notes or bonds, to be secured by an assignment of the revenues of the project and by mortgage of the real estate and improvements. As an alternative plan, the city, under the revenue bond act, No. 465, would borrow the money itself for the erection of the stadium and issue for such loan its revenue bonds, payable solely out of the revenues derived from the stadium project according to the terms of the Act. The plaintiff attacks the constitutionality of both Acts on several grounds, assails both of the proposed plans for the erection of the stadium, and asks for injunctive relief.

After the case had been submitted to the Court, we were advised by counsel for the defendants that the city had abandoned its proposed plan for the erection of a stadium under Act No. 366. The questions, therefore, raised by plaintiff with regard to the constitutionality of that Act have become academic and will not be considered.

■ The main question presented for determination is whether Act No. 465 violates Section 7 of Article 8 and Section 5 of Article 10 of the Constitution.

We quote here that portion of Section 7 which, it is contended, the statute contravenes: "No city or town in this State shall hereafter incur any bonded debt which, including existing bonded indebtedness, shall exceed eight per centum of the assessed value of the taxable property therein, and no such debt shall be created without submitting the question as to the creation thereof to the qualified electors of such city or town. * * * That such cities and towns shall on the issuing of such bonds create a sinking fund for the redemption thereof at maturity."

And so much of Section 5 : "The bonded debt of any county, township, school district, municipal corporation or political division or subdivision of this State shall never exceed eight per centum of the assessed value of all the taxable property therein. * * * And wherever there shall be several political divisions or municipal corporations covering or extending over the territory, or portions thereof, possessing a power to levy a tax or contract a debt, then each of such political divisions or municipal corporations shall so exercise its power to increase its debt under the foregoing eight per cent limitation that the aggregate debt over and upon any territory of this State shall never exceed 15 per centum of the value of all taxable property in such territory as valued for taxation by the State."

Section 1 of the Act provides: "That any county, township, city or incorporated town of the State of South Carolina is authorized to purchase or construct a waterworks system * * * golf courses and stadiums. * * *" And (Section 7) "for the purpose of defraying the cost of purchasing, constructing * * * or repairing any such system or project, any borrower may borrow money and issue its negotiable serial bonds. * * *" And (Section 33) "this Act shall be construed as authorizing the issuance of such bonds provided for herein without submitting the proposition for the approval of same to the voters of the borrower. * * *" It is conceded by counsel for defendants that the eight per cent and 15 per cent limitations will be exceeded in certain areas if the indebtedness proposed under the Act comes within these constitutional limitations; and that the Act, therefore, would violate these two sections of the Constitution if the bonded indebtedness proposed to be created thereby is a bonded debt of the borrower in the constitutional sense.

An inspection of the Act discloses that the bonds proposed to be issued under it for the purposes therein named do not carry the general credit of the borrower; and that under no

circumstances could the borrower, the city in this case, be made to answer for any such obligations. Section 7 expressly provides that "the principal of and interest upon such bonds shall be payable solely from the revenue derived from the operation of the system or project for the purchase, construction * * * or repair of which the same are issued. * * *" And that "no bond or coupon issued pursuant to this Act shall constitute an indebtedness of such borrower within the meaning of any State constitutional provision or statutory limitation. * * *

As stated in *Winston v. City of Spokane,* 12 Wash., 524, 41 P., 888, 889, cited with approval in *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153: "The only obligation assumed on the part of the city is to pay out of the special fund, and it is in no manner otherwise liable to the beneficiaries under the contract. The general credit of the city is in no manner pledged, except for the performance of its duty in the creation of such special fund."

An extended discussion of the question is unnecessary. But see *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421; *Brownlee v. Brock,* 107 S. C., 230, 92 S. E., 477; *McIntyre v. Rogers,* 123 S. C., 334, 116 S. E., 277; *Barnwell v. Matthews,* 132 S. C., 314, 128 S. E., 712; *Sullivan v. City Council,* 133 S. C., 189, 133 S. E., 340; *Briggs v. Greenville County, supra; Evans v. Beattie,* 137 S. C., 496, 135 S. E., 538, 557; *State ex rel. Richards v. Moore,* 152 S. C., 455, 150 S. E., 269; *In re: California Toll Bridge,* 212 Cal., 298; 298 P., 485; *Bates v. State Bridge Commission,* 109 W. Va., 186, 153 S. E., 305; *Kasch v. Miller,* 104 Ohio St., 281, 135 N. E., 813; *Alabama State Bridge Corp. v. Smith,* 217 Ala., 311, 116 So., 695; *Maffit v. City of Decatur,,* 322 Ill., 82, 152 N. E., 602; *Ward v. City of Chicago,* 342 Ill., 167, 173 N. E., 810.

Upon careful consideration, we are of opinion that the cited portions of the Act are not violative of the sections of

the Constitution above quoted in any particular therein named.

Nor do we find any merit in the contention that the statute (Section 35), in making the Attorney General *"Ex-officio* bond commissioner of the State," and in requiring him to perform certain duties in connection with the issuance of the bonds, contravenes Section 24 of Article 4 of the Constitution.

It was held in *Evans v. Beattie, supra,* that the Coastal Highway Act, which required state officials to perform duties in connection with the highway district thereby created, was not in violation of the Constitution. The Court said: "Under Article 4, Section 24, the duties of the state officers therein directed to be elected are required to be specified by law; that is, by action of the General Assembly. They of course may be added to as the General Assembly may from time to time prescribe."

Section 35-a of the statute before us provides that "all bonds authorized pursuant to the provisions of this Act shall be subject to the approval of the Sinking Fund Commission of the State of South Carolina and no bonds issued under the provisions of this Act shall be valid without the certificate of approval of the Sinking Fund Commission." It is argued that this is an unconstitutional delegation of legislative power.

In *State ex rel. Port Royal Min. Company v. Hagood,* 30 S. C., 519, 9 S. E., 686, 688, 3 L. R. A., 841, it is held that an Act authorizing the State Board of Agriculture "to grant or refuse" licenses to mine phosphate rock "as the said board may, in its discretion, deem best for the interests of the state," etc., was not an unconstitutional delegation of legislative power to the board. The Court said: "It is undoubtedly true that legislative power cannot be delegated; but it is not always easy to say what is and what is not legislative power, in the sense of the principle. The Legislature is only in session for a short period of each year, and during

the recess cannot attend to what might be called the business affairs of the State. From the necessity of the case, as well as the character of the business itself that must be performed by agents appointed for that purpose, such as the Railroad Commission, regents of the lunatic asylum, the State Board of Canvassers of Elections, 'Sinking Fund Commission,' etc. The numerous authorities cited in the argument show conclusively that, while it is necessary that the law itself should be full and complete as it comes from the proper law-making body, it may be, indeed must be, left to agents in one form or another to perform acts of executive administration which are in no sense legislative."

In *State ex rel. Richards v. Moore, supra,* this question was gone into and discussed at length; many decisions in point being cited from this and other jurisdictions. The Court in that case held that the Highway Act there considered, which provided alternative plans for financing the construction of state highways, was not void as a delegation of legislative power.

We do not think that the authority here conferred upon the Sinking Fund Commission is in any sense violative of the Constitution as contended. As had been frequently held, it is nothing more than a provision for the efficient execution and administration of a finished statute. The power given is similar in principle to that which has often been delegated to public officials and boards with the approval of the Courts. See *State ex rel. Richards v. Moore, supra.*

It is further urged that the Act in question is invalid for the reason that it purports to exempt bonds issued thereunder from taxation (Section 13). The contention is that "this is an unfair discrimination against bonds of other business enterprises" in violation of Section 5 of Article 1, of the State Constitution, and of the Fourteenth Amendment to the Federal Constitution.

The State has the constitutional right to exempt from taxation property used for municipal purposes (Section 1

of Article X); and as the erection and maintenance of a stadium, like playgrounds or parks, is within the usual municipal powers, it does not appear that there is any foundation for this contention of the plaintiff.

It is also argued that the Act is unconstitutional "in that it proposes to create a statutory lien on municipal or county property and to allow the holders of the bonds remedies thereunder" (Sections 8, 9 and 10). Section 8 provides, in part, as follows: "There shall be created in the authorizing ordinance a statutory lien upon any such system or project, and the appurtenances and extensions thereto so to be purchased, constructed, improved, enlarged, extended or repaired, to and in favor of the holders of said bonds and each of them and to and in favor of the holders of the coupons of said bonds, and each of them. * * *" And Section 9: "Any holder of any of said bonds or of any of the coupons representing interest accrued thereon, may, either at law or in equity, by suit, action, mandamus, or other proceedings, protect and enforce said statutory lien. * * *" And Section 10: "If there be any default in the payment of the principal of or interest upon any of said bonds, any Court having jurisdiction in any proper action may appoint a receiver to administer and operate the system, project or combined system so encumbered on behalf of the borrower. * * *" The position of the plaintiff is that "these provisions are not consistent with the ownership of public property and that a municipal corporation or a county has no power to subject its property to the possibility of its being taken over by the bondholders."

The lien created by the Act or the authorizing ordinance in a case such as the one before us would apply only to the project constructed by moneys derived from the sale of the bonds and would partake of the nature of a purchase-money mortgage. See *Bates v. State Bridge Commission, supra.* The plaintiff has cited no provision of the Constitution, and we know of none, which either forbids the Legislature

to create such a lien, or denies to a municipal corporation or a county the right to do so in its exercise of the powers granted it by legislative authority.

Again, it is suggested that the Act, in permitting and empowering counties, townships, cities, or other incorporated towns of the State to create and maintain the various projects listed in its title and in Section 1, is in conflict with the Constitution for the reason that these projects are not within the general scope of the powers of a municipal corporation or of any of the political subdivisions named. We have made a careful examination of the list of projects named in the Act, and conclude that plaintiff's suggestion is clearly without substantial merit. See *Alabama State Bridge Corporation v. Smith,* 217 Ala., 311, 116 So., 695. In this connection it is also argued that, even in the absence of any constitutional inhibition, the contemplated action of the city, to erect and maintain a municipal stadium without its corporate limits, is *ultra vires,* despite the express authorization of the Legislature. Plaintiff advances no convincing reason why this contention should be sustained. It appears to be well within the general powers of a municipal corporation to erect and maintain a stadium as here contemplated. See *Haesloop v. City Council of Charleston,* 123 S. C., 272, 115 S. E., 596.

After arguments were heard by the Court on the issues made by the original pleadings, the plaintiff was permitted to amend his complaint so as to allege: That the City of Columbia also proposes, under the provisions of Act No. 465, to erect a standpipe and to extend and enlarge its waterworks system, and for that purpose to obtain a loan, by the issuance of "revenue bonds," to be secured by a pledge of not only the revenues from the additions to the waterworks system, which the borrowed money is to build, but also of the present revenues of the department. He challenged the constitutional authority of the city to issue bonds for such purpose without first submitting the

question to a vote of its qualified electors. See Section 7 of Article 8. The city, while admitting that it proposed to erect a standpipe, etc., as alleged by plaintiff, denied that the issuance of bonds, payable in the manner named in the statute, would be violative of any constitutional provision.

Section 7 of the Act provides: "That any municipality now or hereafter owning and operating a system or project named in Section 1, whether constructed under the provisions of this Act or not, and desiring to improve, enlarge, extend or repair the same, may issue revenue bonds under the provisions of this Act to pay for such improvements, enlargements, extensions or repairs, payable from the net revenues to be derived from the operation of the existing system or project as improved, enlarged, extended or repaired, but nothing in this proviso shall be construed as authorizing any such municipality to impair or commit a breach of the obligation of any valid lien or contract created or entered into by it, the intention hereof being to authorize the pledging, setting aside and segregation of such revenues for the construction of such improvements, enlargements, extensions or repairs only where consistent with outstanding obligations of such municipality."

The question presented, succinctly stated, is whether the pledging of existing revenues for the repayment of obligations created for the purpose of enlarging or extending the waterworks system makes the loan a debt within the constitutional sense.

The plaintiff contends that, although the Act provides that the bonds shall be paid solely from the revenues derived from the operation of such system, the effect of the loan would be, as the city would be required to replace such revenues by taxation, to make it a debt within the meaning of the Constitution.

We know of no decision of this Court in which the precise question here involved has been passed upon. The case of *City of Joliet v. Alexander,* 194 Ill., 457, 62 N. E., 861, cited

by plaintiff, appears to give support to the position taken by him. The views announced and conclusions reached by the same Court, however, in two later decisions, *Maffit v. City of Decatur*, 322 Ill., 82, 152 N. E., 602, and *Ward v. City of Chicago*, 342 Ill., 167, 173 N. E., 810, 812, are apparently in accord with the contentions of the defendants. In the *Ward case* the issue was whether a statute authorizing certificates of indebtedness, payable solely from revenues derived from the city's waterworks system, did not create a debt of the city within the constitutional limitation. The Court, in answering the contention of counsel, that the conclusions reached in the *Alexander case* were decisive of the question then before it, said: "The position thus taken seems to be that pledging the water fund creates indebtedness within the constitutional prohibition unless the pledge is confined to such precise income as can be directly traced to the particular new physical element of the plant to pay for which the obligation secured was issued, leaving the original income in effect intact and usable by the city for other purposes altogether. The *Decatur case* is decisive against the soundness of such a position. There the income from the original plant was in effect cut off and lumped into the fund resulting from the operation of the plant as enlarged. It is not apparent that any effort was there made to preserve such original income intact or exempt it in any manner or degree from the claim of the water company, or that moneys made available to the water company under the contract were at all limited to income traceable to the elements of the plant which it had financed."

We have given to the question here raised and stated our very careful consideration, and are of opinion, and so hold, that it should be answered in the negative.

The judgment of the Court is that the injunction prayed for be refused, and the complaint, as amended, dismissed.

And it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.