13931

PARK v. GREENWOOD COUNTY *ET AL.*

(176 S. E., 870)

36

*Mr. D. A. G. Ouzts,* for plaintiff,

*Messrs. R. F. Davis, W. H. Nicholson* and *Robinson & Robinson,* for defendants,

October 31, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

It appears that Greenwood County has made application to the Public Works Administration, under the provisions of the Revenue Bond Act of May 8, 1933 (38 Stat. at Large, p. 411), as amended, for a loan to be used in the erection of a hydro-electric plant at "Buzzard Roost" on the Saluda River; the electrical energy generated to be sold by the county to cities, towns, corporations, and individuals within and without its territorial limits. This action was brought by the plaintiff, a citizen and taxpayer of the county, to enjoin the defendants from erecting and operating such plant, and from issuing bonds to pay for the development.

After this proceeding was instituted, the Duke Power Company and the Southern Utilities Company filed a petition asking to be allowed to interplead. While denying their right to do so, the Court granted them permission to participate in the argument of the case before it. No brief, however, has been filed on their behalf.

We group the issues made by the pleadings as follows:

(1) May the Legislature permit or authorize a county to construct and operate a hydro-electric plant for the uses referred to above?

(2) Do the revenue bonds issued, or here sought to be issued, pursuant to the Act of May 8, 1933, constitute debts within the limitations of Section 7 of Article 8 and Sections 5 and 6 of Article 10 of the Constitution?

(3) Does the proposed ordinance, submitted as an exhibit to the pleadings, comply with the provisions ôf the Act of May 8, 1933?

In considering the first question, it should be kept in mind, as stated in *Fripp v. Coburn*, 101 S. C., 312, 85 S. E., 774, that "the Constitution of the State is

a restraint of power, and the Legislature may enact any law not prohibited thereby."

In the recent case of *Heslep v. State Highway Department,* 171 S. C., 186, 171 S. E., 913, 915, the opinion was closed with this observation, pertinent here: "It has always been, and is now, the law that the General Assembly may enact any Act it desires to pass, if such legislation is not expressly prohibited by the Constitution of this State, or the Constitution of the United States. We find nothing in either of the Constitutions which prohibited the enactment of the law attacked in this case."

Turning to the Constitution, we find that counties, by Section 9 of Article 7, are made bodies politic and corporate. There is nothing in the entire article which can in any way be interpreted as a restriction of the right of the Legislature to authorize a county to build and operate a hydro-electric plant. The fact that the Constitution provides for the creation of a county does not take away from the General Assembly the right to prescribe its powers. In 1 Cooley's Constitutional Limitations 393, we find the following: "The creation of municipal corporations, and the conferring upon them of certain powers and subjecting them to corresponding duties, does not deprive the legislature of the State of that general control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, overrule their legislative action whenever it is deemed unwise, impolitic, or unjust, and even abolish them altogether in the legislative discretion, and substitute those which are different. The rights and franchises of such a corporation, being granted for the purposes of government, can never become such vested rights as against the State that they cannot be taken away; nor does the charter constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. * * * Re-

straints on the legislative power of control must be found in the Constitution of the State, or they must rest alone in the legislative discretion."

*Battle v. Willcox*, 128 S. C., 500, 122 S. E., 516, 518, was an action brought by taxpayers against Marion County and the members of a commission, in which it was claimed that the proposed erection of a hospital was unconstitutional. In dismissing the complaint, the Court had this to say with regard to townships: "But under our Constitution the only delimitation upon the corporate purpose of a township as a subordinate governmental agency is that embraced in the limitation as to territory. As a subdivision of the county, erected into a body corporate for governmental purposes, the corporate purpose of the township is to carry into effect the principle of local self-government, to the extent the Legislature may authorize, by performing such functions and promoting such objects of local public interest as are of immediate concern to the people within the territorial limits of the particular township. To that end the Constitution (Section 11, Art. 7), vests the General Assembly with discretionary power to 'provide such system of township government as it shall think proper in any and all the counties,' and further expressly declares in that connection that it 'may make special provision for municipal government.' The power of the General Assembly to make 'special provision' for the discharge by a township 'in any county' of such particular governmental function or functions as it may think proper to commit to such township is, we think, not open to serious question. See *Grocery Co. v. Burnet*, 61 S. C., 213, 39 S. E., 381, 58 L. R. A., 687; *Carroll v. York*, 109 S. C., 1, 95 S. E., 121; *Askew v. Smith*, 126 S. C., 159, 119 S. E., 378. The corporate purpose of the township, therefore, is to discharge such governmental functions as may be committed to it by the General Assembly in an effort to promote the prosperity, safety, convenience, health, and common good of its inhabitants

See *Brown v. County of Hertford,* 100 N. C., 92, 5 S. E., 178. It follows that, if the erection and maintenance of a hospital is a function of that character, the power conferred by the General Assembly upon Reaves Township was a power granted for a corporate purpose."

It would seem clear, and we so hold, that if a township, a subdivision of a county created under the same constitutional article, is given these broad powers, certainly a county, embracing several townships, may be granted similar powers by the General Assembly.

It is argued, however, that Section 5 of Article 8 of the Constitution, which specifically allows cities and towns, with the approval of their qualified electors, to maintain electrical plants, implies that counties should not have that power. We do not agree with this contention. It seems to us that the real purpose of Section 5 of Article 8 was to bring the exercise of this power by cities and towns into line with the other provisions of the Constitution requiring the approval of acts of the city by its qualified electors. See Sections 2, 7, and 8 of Article 8.

In *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421, 426, the Court declared: "An examination of the instrument (Constitution) as a whole will disclose that only in 12 instances did its framers expressly provide for a referendum to the qualified electors. In their consideration of the subject of finance and taxation, the limitations and safeguards which their wisdom deemed necessary to be embodied in the organic law of the State, they denied the power to increase the public debt of the State (Section 11, Article 10), and of a city or town to incur any bonded debt, except upon a submission of the question to the qualified electors. Yet no such restriction can be found in the instrument with regard to an issue of bonds by a county. Is not this omission significant?"

It may be observed that, while counties and cities are, for many purposes, treated together as municipal corporations, there are essential differences between the two, in that the

governing boards of cities are given legislative powers, such as power to levy a tax, whereas the control of counties in tax matters and other important matters is still left with the General Assembly. For that reason the framers of the Constitution restrained the powers of a city council to incur indebtedness and the like, which was not considered necessary to protect the taxpayers of a county.

We conclude, upon consideration, that the right given to cities and towns to establish and operate lighting plants by the provision of the Constitution pointed out does not affect in any way the power of the Legislature to confer similar rights upon counties, which are expressly made, as we have stated, bodies politic and corporate by Article 7, § 9. We do not think that this holding conflicts in any way with *City of Union v. Board of Commissioners,* 91 S. C., 248, 74 S. E., 496, and *Mauldin v. City Council of Greenville,* 33 S. C., 1, 11 S. E., 434, 8 L. R. A., 291, when these decisions are properly construed.

The following cases evidence a variety of corporate purposes of cities, counties, and townships, which have been approved by this Court:

Hotels. *Haesloop v. City Council of Charleston,* 123 S. C., 272, 115 S. E., 596.

Office building. *Chapman v. Greenville Chamber of Commerce,* 127 S. C., 173, 120 S. E., 584.

Hospitals. *Battle v. Willcox, supra; Law et al. v. City of Spartanburg,* 148 S. C., 229, 146 S. E., 12.

Stadium. *Cathcart v. City of Columbia,* 170 S. C., 362, 170 S. E., 435, 438.

Waterworks and sewerage. *Davis v. Saluda,* 147 S. C., 498, 145 S. E., 412; *Green v. Rock Hill,* 149 S. C., 234, 147 S. E., 346; *Roach v. City of Columbia,* 172 S. C., 478, 174 S. E., 461.

The question of whether an Act is for a public purpose is primarily one for the Legislature; and this Court will not interfere unless the determination by

that body is clearly wrong. *Poulnot v. Cantwell,* 129 S. C., 171, 123 S. E., 651. We find in the case before us that the General Assembly has by the Act of May 8, 1933 (38 Stat. at Large, p. 411), expressly authorized a county to build a plant for the generation and distribution of electric current. This Act has been amended twice since that time (38 Stat. at Large, p. 1306, 38 Stat. at Large, p. 1392). Another Act (38 Stat. at Large, p. 299), as amended in 1934 (38 Stat. at Large, p. 1302), permitted counties to erect, maintain, and operate electric light plants. It will therefore be seen that the Legislature has, at least four times during the past two years, found as a fact that the erection and operation of such a plant by a county is a proper public purpose. This finding, while not conclusive, is entitled to much weight.

Finally, this Court has expressly declared that the purposes set out in the Bond Act of 1933, including the erection by the county of a hydro-electric plant, are not in conflict with any constitutional provision. *Cathcart v. City of Columbia, supra.* We there said: "Again, it is suggested that the act, in permitting and empowering counties, townships, cities, or other incorporated towns of the state to create and maintain the various projects listed in its title and in section 1, is in conflict with the Constitution for the reason that these projects are not within the general scope of the powers of a municipal corporation or of any of the political subdivisions named. We have made a careful examination of the list of projects named in the act, and conclude that plaintiff's suggestion is clearly without substantial merit."

The contention that the validity of the project is affected by the fact that Greenwood County, pursuant to statute, Act May 8, 1933 (38 Stat. at Large, p. 411), as amended, may sell some of its power outside of its territorial limits, is without substantial merit. In the *Cathcart case,* Columbia was allowed to erect a stadium outside of its corporate limits. And in *Paris Mountain Water Co. v. Greenville,* 110 S. C., 36, 96 S. E., 545, the city was

permitted to sell water beyond its boundaries where the territory sought to be served was contiguous to the corporate limits.

The second question presented is whether the revenue bonds sought to be issued will constitute a debt within the constitutional limitations. See Section 7 of Article 8, and Sections 5 and 6 of Article 10.

This is no longer an open question, since we have twice declared that the revenue bonds proposed under this Act are not debts in a constitutional sense. *Cathcart v. City of Columbia, supra; Roach v. City of Columbia, supra.* The following utterance of the Court in the *Cathcart case* is applicable here:

"An inspection of the act discloses that the bonds proposed to be issued under it for the purposes therein named do not carry the general credit of the borrower; and that under no circumstances could the borrower, the city in this case, be made to answer for any such obligations. Section 7 expressly provides that 'the principal of and interest upon such bonds shall be payable solely from the revenue derived from the operation of the system or project for the purchase, construction * * * or repair of which the same are issued. * * *' And that 'no bond or coupon issued pursuant to this act shall constitute an indebtedness of such borrower within the meaning of any State constitutional provision or statutory limitation. * * *'

"As stated in *Winston v. City of Spokane,* 12 Wash., 524, 41 P., 888, 889, cited with approval in *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153: 'The only obligation assumed on the part of the city is to pay out of the special fund, and it is in no manner otherwise liable to the beneficiaries under the contract. The general credit of the city is in no manner pledged, except for the performance of its duty in the creation of such special fund.' "

The remaining question is whether the resolution of the finance board for Greenwood County complies with the terms of the Revenue Bond Act.

An examination of the resolution shows that an estimate of the cost of the hydro-electric plant has been made; that a bond form complying with the statute and expressly providing that both principal and interest are payable solely from the gross revenues derived from the operation of the hydro-electric power system has been adopted; that pursuant to Section 22 of the Act a bond and interest redemption fund, an operation and maintenance fund, a depreciation fund, and a contingent fund have been provided for; that rates for service have been fixed; that a depository has been selected; that free service shall not be rendered by the hydro-electric plant; that a statutory lien has been created; that provisions for insurance, records, and inspections have been made; and that authority has been given the proper officers of Greenwood County to execute the necessary papers. It appears that in all essential particulars the resolution of the governing body of Greenwood County (38 Stat. at Large, p. 2020), complies with the provisions of the Revenue Bond Act (38 Stat. at Large, p. 411), as amended.

We therefore conclude, and so hold, that it is within the proper corporate purposes of Greenwood County to build, erect, maintain, and operate the hydro-electric system referred to in the pleadings; that the revenue bonds issued for the purpose of building such plant do not contravene any constitutional limitations; that the resolutions of Greenwood County comply with the statutory provisions; and that the revenue bonds issued pursuant thereto will constitute valid obligations in accordance with the terms of the Act of May 8, 1933 (38 Stat. at Large, p. 411), and Acts amendatory thereto, as herein construed.

The judgment of the Court is that the injunction prayed for be refused, and the complaint dismissed. And it is so ordered.

MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON concur.