### 14138

#### BOLLIN v. GRAYDON ET AL.

(181 S. E., 467)

376

Mr. *Charles I. Dial,* for petitioner,

Mr. *William Elliot, Jr.,* for respondents,

September 10, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

At the 1935 session of the General Assembly of South Carolina an Act, No. 540, approved June 5, 1935, was passed which provided for the erection of a courthouse for Richland County. To that end a commission was created, the members of which were to be elected by the majority of the Richland County legislative delegation. This has been done and those so elected are properly made parties respondents in this proceeding, along with the duly elected board of county commissioners for Richland County, to whom are delegated certain powers and functions by the said Act. This Act amended the Act No. 299, approved May 8, 1933, 38 St. at Large, p. 411, making the provisions of that Act applicable to buildings of the nature provided for in Act No.

540. Among the powers thus conferred upon the courthouse commission is authority to issue bonds payable solely from the revenues to be derived from the building to be erected.

The building commission, under the authority granted to it by the two named Acts, is preparing to apply to the Public Works Administration for a grant of 45 per cent. of the cost of the courthouse to be built, and proposes to supplement that sum by issuing bonds for 55 per cent. of the cost, under the terms and conditions of the Revenue Bond Act of 1933, as amended by the Act No. 540, *supra.*

The building commission estimates that the cost of the courthouse will be approximately $300,000.00, and it proposes to issue bonds in the sum of $165,000.00.

The building commission has entered into a written contract with the Richland County board of county commissioners whereby it has leased the courthouse to said board of county commissioners for the term of the life of the bonds, at an annual rental of $10,000.00, which it is estimated to be sufficient to retire them. By resolutions, duly and properly adopted by the building commission in accordance with the provisions of said two Acts, the building commission has recognized the validity of the statutory lien upon the courthouse, and the appurtenances thereto created and granted by said Acts as amended; and the building commission has pledged the revenues derived from the building, and the entire income and revenues from fees charged by said Richland County officers, or so much thereof as may be necessary to pay the principal and interest of said bonds.

These several actions of the building commission are adopted, ratified, and confirmed by the Richland County board of county commissioners.

The petitioner, John H. Bollin, has filed his petition in the original jurisdiction of this Court against the building commission and the board of county commissioners challenging "the validity of these procedures under the Revenue Bond Act of 1933, as amended, Act No. 540, Acts of 1935,

and the Constitution of 1895, and he also questions the term of office of the Commission."

He prays for an order enjoining the respondents from carrying out said lease, and from issuing the proposed bonds.

Mr. Chief Justice Stabler issued a rule requiring the respondents to show cause, if any they have, why the injunction prayed for should not be granted.

In due time respondents made return to the rule, and the matter was heard upon an agreed statement of facts.

Counsel for petitioner submits as the questions for determination the following:

1. Can the Richland County courthouse commission and the Richland County board of county commissioners enter into a lease or rental agreement and pledge for the payment of the rent thereunder the fees collected by the county officers of Richland County?

2. Can the Richland County courthouse commission and the Richland County board of county commissioners issue bonds and pledge for the payment of the same the fees collected by the county officers of Richland County?

3. Can the Richland County courthouse building commission and the Richland County board of county commissioners issue bonds in violation of the constitutional limitations which require that the question of the issuance of such bonds be submitted to the qualified electors of Richland County?

Petitioner apparently assumes by his first propounded question that the Richland County courthouse building commission and the Richland County board of county commissioners are identical bodies, corporate or political. The fallacy of the assumption is patent. The Richland County courthouse commission is a body specially created for the purpose of building a courthouse for Richland County, or a combination courthouse and office building and/or a combination courthouse and jail. Whereas the county board of

county commissioners consists of a supervisor and commissioners elected and/or appointed, with general supervision of various departments, interests and agencies of the county. It is true that the Act No. 540 devolves upon the county board of county commissioners certain offices and duties in connection with the building of the courthouse, but it does not thereby make it a co-ordinate branch, or part of the Richland County courthouse building commission. Section 4 of Act No. 540 makes it the duty of all county officials, agents, employees, attorneys and engineers to render such services as they may be called on to do by the commission, but this does not make them parts and parcels of the commission.

It would seem that so much of Question 1 as challenges the power of the building commission and the county board of county commissioners is specifically answered by the provisions of Section 6 of Act 540, in this manner : "The Board of County Commissioners for Richland County and the Courthouse Building Commission are authorized subject to the approval of a majority of the Richland County Legislative Delegation to enter into a contract providing for the payment by Richland County of a fair rental for the portion of the Court House Building occupied by the County."

The building commission has leased the courthouse building to the county board of commissioners at a fixed rental, and the contract has been approved by the Richland County legislative delegation.

Section 5952 and other sections of the Code of 1932 provide that the highway department may enter into reimbursement agreements with the highway districts and counties, and these provisions have been held to be constitutional. See *State v. Moorer,* 152 S. C., 455, 150 S. E., 269.

The contention of Question 1 that the building commission and the Richland County board of county commissioners could not enter into the rental agreement is untenable.

We will later consider, in connection with a similar issue made by Question 2, whether the building commission and the Richland County board of county commissioners could pledge the fees collected by the county officers of Richland County.

We may consider together the issues made by Questions 2 and 3, whether the building commission and the board of county commissioners could legally issue bonds, and especially whether they could do so without submitting the matter to the qualified electors of Richland County.

Section 3 of Act 540, Acts 1935, which creates the building commission, provides that: "This commission, for the purposes set out above may exercise in the name of the county all the powers granted to the counties in the Revenue Bond Act of 1933, approved May 8, 1933, XXXIV [XXXVIII] Stat. 411, as amended. Among other powers, they are authorized to issue bonds payable solely from the revenues derived from the building to be erected."

It is to be noted that the Act gives the building commission the discretionary power to erect " a courthouse or a courthouse and jail combined, or a courthouse and office building combined, prescribing the powers and duties of the courthouse commission, *Authorizing the County to Issue Revenue Bonds, Payable Solely from the Revenues Derived from the Operation of Such Courthouse and office Building."* Clearly then the provision for issuing bonds (so italicized by us) is applicable only in case a combined courthouse and office building are erected. But the building commission has elected to erect only a courthouse. Evidently, in anticipation of such decision, the Act further provides that the courthouse commission may "Issue Bonds under the Provisions of the Revenue Bond Act of 1933, Approved the 8th day of May, 1933, XXXIV [XXXVIII] Stat. 411, as Amended."

Here, then, is the specific authority given to the courthouse building commission, not to the county, to issue bonds. It

carries ample power and authority for the issuance of the bonds, unless such grant of power be contrary to some statute or constitutional provision.

Petitioner contends that the commission cannot issue bonds without submitting the question of such issuance to the qualified electors of Richland County.

It would seem that this question was set at rest by the case of *Briggs v. Greenville County*, 137 S. C., 288, 135 S. E., 153, 154, and various decisions of this Court following that case. There the issues arose out of the construction of Acts of the General Assembly providing for reimbursement agreements. The issue in that case is thus stated: "For the purpose of raising the moneys required by these reimbursement agreements, to be advanced to the State Highway Commission, the respondent supervisor proposes to issue bonds of the county or of the road district. * * * The question whether the State Highway Commission shall enter into these reimbursement agreements has not been submitted to the electors of the State of South Carolina at a general election, nor has any proposition to increase the debt of the State been approved by * * * the qualified electors * * * as provided in Section 11 of Article 10 of the State Constitution."

And, it may be added, that the question of issuing the said bonds had not been submitted to the qualified electors of Greenville County.

Continuing the quotation from the opinion:

"Will said reimbursement agreements constitute a debt of the state incurred without a vote of the people, in violation of Section 11 of Article 10 of the Constitution of South Carolina?

"The proposed reimbursement agreements will not constitute a general liability of the state. The reimbursements * * * can be made only from a special fund consisting of the gasoline tax, automobile license tax, and federal aid.

No property tax can ever be levied to meet these obligations."

These principles are upheld by the citation of many authorities.

In the same opinion it is there asked: "Will the issuance of the proposed bonds of Greenville County or of the coterminous road district of Greenville County be in violation of the provisions of Section 5 of Article 10 of the Constitution of South Carolina?"

For the reasons above given upholding the reimbursement agreements and holding that it was not necessary to submit the question to the people, it must be held that the bonds of Greenville County were not rendered invalid because the question of their issuance was not submitted to the qualified electors of Greenville County. Their retirement is provided for by a special fund, and no property tax can ever be levied to pay them.

So in the present case the Act authorizing the issuance of the bonds expressly provides that the general credit and taxing power of Richland County shall not be pledged by the commission, but the commission shall have power to borrow only on bonds payable solely from the revenues derived from the operation of the erected building.

In the case of *Park v. Greenwood County,* 174 S. C., 35, 176 S. E., 870, 873, this occurs:

"The second question presented is whether the revenue bonds sought to be issued will constitute a debt within the constitutional limitations. See Section 7 of Article 8, and Sections 5 and 6 of Article 10.

"This is no longer an open question since we have twice declared that the revenue bonds proposed under this act are not debts in a constitutional sense. *Cathcart v. City of Columbia* [170 S. C., 362, 170 S. E., 435], *supra; Roach v. City of Columbia* [172 S. C., 478, 174 S. E., 461], *supra.* The following uteterance of the Court in the Cathcart case is applicable here:

" 'An inspection of the act discloses that the bonds proposed to be issued under it for the purposes therein named do not carry the general credit of the borrower; and that under no circumstances could the borrower, the city in this, case be made to answer for any such obligations. Section 7 expressly provides that "the principal of and interest upon such bonds shall be payable solely from the revenue derived from the operation of the system or project for the purchase, construction * * * or repair of which the same are issued." And that "no bond or coupon issued pursuant to this act shall constitute an indebtedness of such borrower within the meaning of any state constitutional provision or statutory limitation. * * *"

" 'As stated in *Winston v. City of Spokane,* 12 Wash., 524, 41 P., 888, 889, cited with approval in *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153: "The only obligation assumed on the part of the city is to pay out of the special fund, and it is in no manner otherwise liable to the beneficiaries under the contract. The general credit of the city is in no manner pledged, except for the performance of its duty in the creation of such special fund." ' "

It is clear that it was not necessary to submit the question of the issuance of the bonds to the qualified electors of Richland County.

The petitioner contends that the building commission and the board of county commissioners had no power to pledge the fees collected by the county officers of Richland, for the payment of the rent to become due, and for the payment of the bonds. The argument seems to proceed upon the theory that no revenue is to be derived from the courthouse which can be applied for the payment of rent, or for the payment of the bonds. It must be conceded that the bonds are to be issued under the provisions of the Revenue Bond Act of 1933, as amended by the Act of 1935. The last named Act in express language declares *that the bonds are "payable solely from the revenues derived from the ope-*

*ration of"* the building to be erected. Section 5. The building is to be operated for the purpose of conducting the public business of Richland County. Each county officer maintains an office in the courthouse where he conducts the business pertaining to his office. He is required to collect fees for certain classes of the business done by him in his official capacity, which fees he is required to turn into the treasury of the county as general county funds. The county does not yet own the building; it rents it, for the uses of its officers and other public functions and uses. It seems hypercritical to say that the fees collected by the county officers in the interest of the county in a building rented by the county are not derived from *"the operation of the building."*

The Acts of 1935 and of 1933, as amended, gave the building commission and the county board of county commissioners power to make the rental contract. The $10,000.00 annual rent is to constitute a fund for the payment of interest on the bonds and for the retirement of the bonds. It would be an anomalous situation if the board did not have authority to make provision for the protection of the payment of the rent under the lease.

The petitioner contends that the pledging of the fees is, in effect, an attempt to delegate to the bondholders power to exercise the full faith and credit and taxing power of Richland County for the purpose of enforcing the payment of the bonds.

That this apprehension of danger is wholly unfounded is made manifest by the opinion of this Court in *Cathcart v. City of Columbia*, 170 S. C., 362, 170 S. E., 435.

This is not a public debt; it is payable from a special fund, to wit, the sum of $10,000.00 paid annually by the county for the rent of the courthouse during the life of the bonds. Only so much of the fees annually collected by the officers of the county as is necessary to pay this rental will be used. It is estimated that the fees thus collected will amount annually to $31,000.00. Even if the pledging of the fees

gave the power of taxation to the bondholders, the contingency of the exercise of such power is so remote as to be negligible.

It would appear that the petitioner is of the view that the commission has proceeded under the first alternative granted to it by the Act creating it and defining its powers and duties, viz.: To build the courthouse, issue bonds as contemplated by the Revenue Bond Act of 1933, pledge the fees collected by the county officers to the retirement of the bonds and pledge the full faith and credit of the county to the· establishment and maintenance of a fund supplied by these fees sufficient to pay the bonds and interest, and to give the bondholders a first lien on such fund.

But the commission did not adopt that course. It entered into a lease contract with the county board of county commissioners by which the board is obligated·to pay an annual rental of $10,000.00 for the use by the county of the courthouse, which rental will be set up by the county treasurer as the fund from which the principal and interest of the bonds will be paid, and they pledge to the bondholders the full faith and credit of the county to the payment of this obligation, viz., the payment of the rent falling due under the lease, and to this end they give the bondholders a first lien on the fees collected by the county officers.

The petitioner argues that this is a delegation by the commission of the taxing power of the county to be invoked in the event of default in the payment of interest or principal of the bonds. This position is without merit. After the fees are paid in to the county treasurer with the lien established thereon, and the fees are set up by the county treasurer as a special fund for this special purpose, if default in the payment of interest or principal of the bonds is made, the bondholders need only to procure a writ of mandamus to require the treasurer to draw his warrant for the payment due. This is a simple ministerial duty on the part of the treasurer. when the lien has been established on the fund, the county

treasurer is compelled to deposit of the fees an amount sufficient to pay the obligations as they mature. These funds cannot be diverted by any one to any other purpose.

The petitioner challenges the validity of Act No. 540 because of ambiguity, in that the term of office of the building commissioners is fixed at two years, whereas by the terms of Section 7 of the Act it is provided that the commission shall cease to function when the courthouse is completed.

A similar question arose in the case of *Briggs v. Greenville County, supra.* The Court disposed of it in this wise: "A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it." Citing Lewis' Sutherland on Statutory Construction (2d Ed.), § 86.

It is confidently asserted that the courthouse will be completed in much less time than two years. If this is done, the commissioners become *functus officio*. If for any reason a longer time is needed for the work, the Legislature can, by proper action, extend the term of the commission, if that be necessary.

The petitioner challenges, generally, the power of the General Assembly to pass Act No. 540. It is axiomatic that the Legislature may pass any act which does not run counter to the constitutional inhibitions. The following cases decided by this Court, which are akin in nature to the purpose of Act No. 540, 1935, are indicative of the character of legislation held to be valid: *Haesloop v. City Council of Charleston*, 123 S. C., 272, 115 S. E., 596; *Chapman v. Greenville Chamber of Commerce*, 127 S. C., 173, 120 S. E., 584; *Battle v. Willcox*, 128 S. C., 500, 122 S. E., 516; *Law v. City of Spartanburg*, 148 S. C., 229, 146 S. E., 12; *Cathcart v. City of Columbia*, 170 S. C., 362, 170

S. E., 435; *Davis v. Town of Saluda,* 147 S. C., 498, 145 S. E., 412; *Green v. City of Rock Hill,* 149 S. C., 234, 147 S. E., 346; *Roach v. City of Columbia,* 172 S. C., 478, 174 S. E., 461; *Park v. Greenwood County,* 174 S. C., 35, 176 S. E., 870.

Careful consideration of all the matters and things suggested and proffered by the petition for injunction satisfies the Court that the petition is without merit.

It is the judgment of the Court that the injunction prayed for be denied, and that the rule to show cause be dismissed.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Baker and Fishburne concur.