16780

CALDWELL *ET AL. v.* McMILLAN *ET AL.*
(77 S. E. (2d) 798)

*Messrs. Winter & Winter,* of Columbia, *for Appellants,*

*Messrs. T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Respondents,*

September 24, 1953.

TAYLOR, Justice.

This action was commenced in the Court of Common Pleas for Richland County by owners and operators of cafeterias, restaurants and eating places in and near the City of Columbia and members of The South Carolina Restau-

rant Owners Association on behalf of themselves as such and as citizens and taxpayers seeking to enjoin the respondents from constructing and equipping or operating a cafeteria in the new State Highway Department Building.

His Honor, Judge Moss, who heard the matter, issued his order, dated May 31, 1952, refusing the relief sought and appellants now come to this Court upon exceptions which according to their brief state sixteen questions, as follows:

"1. Does Act No. 1065, page 2672, Acts of 1950, give the Highway Department authority to build space and furnish equipment for and to have operated, a cafeteria or public eating place in the new Highway Department Administration Building?

"2. Does the proviso in the General State Appropriation Bill for 1951-1952, Section 68 of Act No. 718, Acts of 1952, legally cure the defect and give such authority?

"3. Does this put the State in the restaurant business, in unfair competition with plaintiffs, and deny them equal protection of law in violation of Art. 1, Sec. 5, Const., S. C. 1895 and the Fourteenth Amendment to the Constitution of the United States?

"4. Does the use of funds for such purpose constitute an unlawful diversion of public funds in violation of Art. 1, Sec. 5, of the Constitution of S. C. and the Fourteenth Amendment of the United States Constitution in that it amounts to taking of property without due process of law? Is 'it likewise in violation of Art. 1, Sec. 17 of the S. C. Constitution?

"5. Is the establishment of a cafeteria a 'proper facility' for conducting the affairs of the State Highway Department in Columbia?

"(b) Is the establishment of such place for 'State officials and employees' a proper facility of said department?

"6. If the Statute in question does give authority to erect and maintain such restaurant or cafeteria is that purpose

expressed in the title of the act or is it germane thereto as required by Art. III, Sec. 17 of the State Constitution?

"7. Is the proviso in question, found in Sec. 68 of Act 718 of 1952 (pages 1731-1842) in violation of the State Constitution, Art. III, Sec. 17, in that it is not expressed in the title of the act or germane thereto?

"8. Did the Circuit Court Judge err in finding there is a necessity for such cafeteria?

"9. Did the Circuit Judge err in holding the cafeteria and public eating places in Columbia are so crowded they cannot properly serve State employees?

"10. Is the question of benefit from or necessity for such eating place legally a question of expert opinion?

"11. Is the furnishing of school lunches for underprivileged children a criterion for establishment of such eating place?

"12. Is the fact that a few private business places provide eating places such a criterion?

"13. Is the establishment of such a cafeteria for white people only, in a government building, where both white and colored people are employed, conducive to proper relations between the races and is this a matter of public concern, which the Circuit Judge erred in overlooking?

"14. Would the plan of leasing space and equipment, to be operated under rules and regulations of the Highway Department, legalize the operation and prevent its being subsidized, or unfair competition?

"15. Did the Circuit Judge err in holding the proposed cafeteria may be operated for public patronage, rather than restricting it to use of officials and employees of the Highway Department?

"16. Is the establishment of a public eating place for a department of the State Government, and operation thereof, under control of such department, a distinct step toward Socialistic Paternalism, contrary to the public policy of South Carolina?"

The pertinent portion of the title of Act 1065, 46 St. at Large, p. 2672, Acts of 1950, appears as follows: "An Act to Authorize The State Highway Commission To Construct A State Office Building Or Buildings In The City of Columbia And To Negotiate A Loan From The State Sinking Fund Commission To Finance Same." And the pertinent portion of Section 1 of this Act reads:

"The State Highway Commission is hereby authorized and directed to erect a building or buildings in the City of Columbia for the state headquarters of the State Highway Department and/or State Highway Commission, which building, or buildings, shall be adequate for present and anticipated future needs of the said commission and department for office space and other proper facilities in the City of Columbia for conducting the affairs of the department."

Plans were prepared and work started on constructing the building and equipping a place for a cafeteria when this action was commenced on January 18, 1952. While pending, the 1952 Appropriation Bill was adopted by the General Assembly, known as Act No. 718, R. 744, which contained the following proviso:

"Provided, Further, That the State Highway Department is hereby authorized to provide room space and facilities in the new State Highway Department Administrative building in Columbia for serving meals to State employees and officials, and to lease such space on competitive bids to a qualified restaurateur for operation on such terms and conditions as may be advantageous to the State to provide its employees and officials affected with reasonable inbuilding eating accommodations comparable with those offered in modern office buildings by private enterprise." 47 St. at Large, p. 1828, § 68.

The 1950 Act provided for the construction of the building for its present and future needs, for office space and other *proper facilities*. We, therefore, must consider whether whether or not the operation of a cafeteria by the Highway

Department for the benefit of its employees is a proper facility within the terms of the Act. The word "facility" means: "A thing that promotes the ease of any action, operation, transaction, or course of conduct; advantage; opportunity; * * * ." Webster's New International Dictionary. It could hardly be argued that under this definition the Highway Department would be denied the authority to equip the building with furniture, supplies, elevators, air conditioning, modern lighting, and various machines and equipment as aids to efficiently handling the department's business. Many improvements which in the past were considered luxuries have now come to be considered necessities.

In determining whether or not under the Acts appellants would be denied equal protection under the law and their property taken without due process of law in that the State will be in the restaurant business in unfair competition and that public funds will thereby be diverted to private purposes, we are called upon to determine whether or not the phrase "public purpose" might encompass such operation. A great many things are now considered to be of public concern which in the past were considered private, such as housing, schools, health programs, school lunches, retirement and pension plans, annual and sick leave for employees, workmen's compensation insurance for public employees have all been held to be within the scope of legislation for the public welfare.

"In general, a public purpose has for its objective the promotion of the public health, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political division, so that whatever is necessary for the preservation of the public health and safety is a public purpose, and if an object is beneficial to the inhabitants and directly connected with the local government it will be considered a public purpose; but in order to sustain a public purpose the advantage accruing to the public must be direct, not merely indirect or remote. * * *

"What constitutes a public purpose depends in part on the time or age, place, objects to be obtained, modus operandi, economics involved, and countless other attendant circumstances, and customs and usages may properly be considered, but, while recognizing the influence of customs and usages already established, the courts also recognize that customs and usages may change so that a purpose which was formerly conceded to be private may now be public; and therefore the novelty of a purpose does not render it the less a public purpose." 73 C. J. S., Public, pp. 277-278. See *Lay v. State Rural Electrification Authority,* 182 S. C. 32, 188 S. E. 368.

The Legislature, approximately two years after the passage of the first Act, passed the 1952 Amendment which states clearly the intended purpose of the legislation and the question of whether or not an act is for a public purpose is primarily one for determination by the legislative body rather than the Courts and the Courts will not interfere unless it appears that the legislative body was clearly wrong. The findings of the Legislature in this respect are not conclusive, however, but entitled to much weight at the hands of this Court. *Park v. Greenwood County,* 174 S. C. 35, 176 S. E. 870. Those engaged in the conduct of the business of the State are public employees and as such perform a public service, the efficiency of which is to be highly desired by the public generally as government is the public's paramount business. It is, therefore, difficult to envision a greater need than efficiency on the part of the employees of a governmental agency. The relationship of employer and employee of today is entirely different from that of twenty-five years ago. There are approximately five hundred persons employed by the Highway Department in this building alone and their efficiency and welfare are of course a matter of concern of all the people of the State.

In *Bowler v. Nagel,* 228 Mich. 434, 200 N. W. 258, 37 A. L. R. 1155, a case which concerned the rights of the City of Detroit to provide for pensions and retirement for its

employees, the Court held, in effect, that since the act made public service more attractive and the efficiency of the public employee was promoted, it was constitutionally proper. And in *Bridges v. City of Charlotte,* 221 N. C. 472, 20 S. E. (2d) 825, 833, the N. C. Supreme Court in passing upon the constitutionality of the retirement plan for public school teachers stated:

"The relation of the Retirement Plan to the public school system has been fully discussed above, and the discussion will not be repeated here. It is sufficient to say that the expected improvement in standards of service, and the stabilization of teacher employment, are sufficient to constitute a public purpose, and justify the imposition of the tax."

Employment of the best qualified personnel for public positions is a matter of vital public concern as the integrity and efficiency of the employees goes to the very basis of good government. The health, mental alertness, efficiency and the desire that employees remain on the premises during lunch hour with the maximum amount of relaxation, in the allotted time, and the availability of proper food are all matters which vitally concern an employer and if such facilities as a practical matter operate as competition with appellants this in itself is not sufficient for this Court to grant them the relief sought, as the only kind of competition it can restrain is unlawful competition.

In *Clarke v. South Carolina Public Service Authority,* 177 S. C. 427, 181 S. E. 481, 487, we find the following:

" 'But the rights of the public, as well as the rights of one individual, are involved, and ordinarily, when these two rights conflict, the rights of the individual must yield to the rights of the public." *Farrow v. City Council of Charleston,* 169 S. C. 373, 168 S. E. 852, 856, 87 A. L. R. 981.

"This court has approved the participation in or operation by public bodies of projects involving power plants, hotels, office buildings, hospitals, waterworks systems, and stadiums. See *Park v. Greenwood County, supra; Haesloop*

*v. City of Charleston,* 123 S. C. 272, 115 S. E. 596; *Chapman v. Greenville Chamber of Commerce,* 127 S. C. 173, 120 S. E. 584; *Battle v. Willcox, supra* [128 S. C. 500, 122 S. E. 516]; *Law v. Spartanburg,* 148 S. C. 229, 146 S. E. 12; *Davis v. Saluda,* 147 S. C. 498, 145 S. E. 412; *Green v. Rock Hill,* 149 S. C. 234, 147 S. E. 346; *Roach v. City of Columbia,* 172 S. C. 478, 174 S. E. 461; *Paris Mountain Water Company v. City of Greenville,* 110 S. C. 36, 96 S. E. 545; *Cathcart v. City of Columbia, supra* [170 S. C. 362, 170 S. E. 435]; see also, *Home Building & Loan Association v. Blaisdell,* 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481." See, also *Cothran v. Mallory,* 211 S. C. 387, 45 S. E. (2d) 599, *Woodworth, Mayor, v. Gallman,* 195 S. C. 157, 10 S. E. (2d) 316; *Everson v. Board of Education,* 330 U. S. 1, 67 S. Ct. 504, 91 L. Ed. 711, 168 A. L. R. 1392; *Goodman v. School Districts,* 8 Cir., 32 F. (2d) 586, 63 A. L. R. 92.

We are, therefore, of the opinion that questions one, two, three, four and five should be resolved against appellants' contentions.

The question of whether or not the Act and the 1952 proviso are in violation of Art. III, Sec. 17 of the State Constitution, in that the purpose is not expressed in the title of the Act or germane thereto must also be resolved against appellants' contention. It has long been held by this Court that the title of an Act is not of necessity a full index of the contents and, therefore, need not go into detail of every expenditure provided in the act itself when the general subject of the Act is expressed in the title. The details, names, methods or instrumentalities with which the general purpose is to be accomplished, and are germane to the act, may be expressed in the body thereof without violating the provisions of the Constitution that provide every Act to relate to one subject which should be expressed in the title. The General Appropriation Act provides for funds for the operation of the various agencies of the State, including the Highway Department and questions six and

seven must also be resolved against appellants' contention. See *Crouch v. Benet,* 198 S. C. 185, 17 S. E. (2d) 320; *Plowden v. Beattie, Comptroller General,* 185 S. C. 229, 193 S. E. 651; *McCollum v. Snipes,* 213 S. C. 254, 49 S. E. (2d) 12; *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316; *State ex Rel. Richards v. Moorer,* 152 S. C. 455, 150 S. E. 269, and cases cited therein.

This being an equity case we have reviewed the record and find no merit in eight, nine, ten, eleven, twelve and thirteen. There is no showing in the record that the proposed cafeteria would be operated for the public generally, but rather that it is the expressed purpose that it be operated in such a manner as to make meals available to State employees and officials. By doing so, increased efficiency in the handling of the State's business is sought.

"It must be remembered that the General Assembly possesses plenary legislative power and, representing the people who are the source of all governmental power, its acts carry a strong presumption of validity and will not be judicially declared to be invalid unless, beyond reasonable doubt, in contravention of some constitutional inhibition. *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316." *State ex rel. Roddey v. Byrnes, Governor,* 219 S. C. 485, 66 S. E. (2d) 33, 36.

The Legislature has full power to make any and all laws which it considers beneficial to the State and its people unless such laws run counter to some limitation or prohibition of the Constitution and the burden of proof of both law and fact must be borne by him who charges a violation of some provision of the Constitution and appellants have been unable to successfully do so in this case. Therefore, there is no merit in appellants' position relative to questions fourteen, fifteen and sixteen, *Chapman v. Greenville Chamber of Commerce,* 127 S. C. 173, 120 S. E. 584; *Green v. City of Rock Hill,* 149 S. C. 234, 147 S. E. 346.

Private enterprise has long realized that it is to its advantage to provide proper eating facilities for its employees

162

and for many years various governmental agencies have done likewise, yet counsel has not cited and we know of no case where the right to do so has heretofore been questioned in the Courts.

We are of the opinion that the order appealed from should be affirmed and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.