year or the amount of capital invested.   Doubtless a license for a proportionate sum might be issued for a portion of the year unexpired when the licensee should begin business.

The ordinance clearly violates the limitations contained in the statute, in that it fixes an unreasonable sum for the license, does not graduate the license fairly according to gross income nor according to capital invested, and is void.

The petitioner is therefore entitled to his discharge and it is so ordered.

---

## 11370

CHAPMAN v. GREENVILLE CHAMBER OF COMMERCE *ET AL*

(120 S. E., 584)

1. CONSTITUTIONAL LAW—PRESUMPTION OF VALIDITY EXTENDS TO EVERYTHING IN ACT.—The presumption of validity extends to everything in an Act, and to everything upon which it is based.

2. DEDICATION—DEDICATION FOR STREET PURPOSES IS TO PUBLIC AT LARGE.—A dedication for street purposes is a dedication to the public at large, and not a dedication to the County in which the land is situated.

3. MUNICIPAL CORPORATIONS—LEGISLATURE HAS PARAMOUNT AUTHORITY OVER PUBLIC WAYS.—Though under Civ. Code 1912, §§ 2931, 2951, the City of Greenville has control over its public ways, this control is derived from the Legislature, which represents the public at large, and has paramount authority over all ways and public places.

4. MUNICIPAL CORPORATIONS—LEGISLATURE MAY LEGALIZE NUISANCES IN STREETS.—The Legislature may legalize obstructions in streets which otherwise would be nuisances.

5. MUNICIPAL CORPORATIONS — ABSENCE CONSTITUTIONAL RESTRICTION, LEGISLATURE NOT LIMITED AS TO USE OF STREETS.—As respects the public or municipalities, there is, in the absence of special constitutional restrictions, no limit upon the power of the Legislature as to the uses to which streets may be devoted.

6. STATES—CONFERRING ON CHAMBER OF COMMERCE SITE FOR ERECTION OF BUILDING NOT "DONATION OF PUBLIC PROPERTY."—Act February

2, 1923 (33 St. at Large, p. 688), conferring on a Chamber of Commerce for one hundred years the exclusive control of an old Court House built in the middle of the street, and requiring the Chamber of Commerce to tear it down and erect an eight or ten-story building, in which the County was to have the use of certain offices and one-half of the rent of any surplus space, *held* not a donation of public property prohibited by Constitution, Article 3, § 31.

7. STATUTES—ACT GIVING CHAMBER OF COMMERCE BUILDING SITE RE-LATES ONLY TO ONE SUBJECT.—Act February 2, 1923 (33 St. at Large, p. 688), conferring on a Chamber of Commerce a building site for the erection of an office building, in which the County was to have the use of certain offices and one-half the rent of any surplus •space, *held* not to relate to several distinct subjects, but rather to several phases of the same general subject.

8. STATES—ACT GIVING CHAMBER OF COMMERCE BUILDING SITE HELD NOT TO PLEDGE CREDIT OF STATE OR MAKE STATE JOINT OWNER.—Act February 2, 1923 (33 St. at Large, p. 688), conferring on the Chamber of Commerce for 100 years the exclusive control of a building site for the erection of an office building in which the County was to have the use of certain offices and one-half the rent of any surplus space, *held* not to violate Const., Art. 10, § 6, providing that the credit of the State shall not be pledged or loaned for the benefit of any individual, association, or corporation, and the State shall not become joint owner of or stockholder in any such organization.

9. CONSTITUTIONAL LAW—VALIDITY OF ACT NOT DETERMINED BY UN-EXPRESSED SPIRIT.—In determining the validity of an Act, the Court is not to be controlled by any unexpressed spirit or public policy supposed to underlie and pervade the Constitution.

10. CONSTITUTIONAL LAW—VALIDITY OF ACT SUSTAINED THOUGH COURT MAY DEEM IT UNWISE.—The Court must sustain the validity of an Act if it is possible to do so by any reasonable construction of the Constitution, though it differs with the Legislature as to its propriety.

Before MAULDIN, J., Greenville, August, 1923. Affirmed.

Action by Judson W. Chapman in his own right and as a citizen and taxpayer against Greenville Chamber of Commerce, Greenville County, City of Greenville and others. From decree rendered the plaintiff and the defendant Greenville County appeal.

The decree of Circuit Judge T. J. Mauldin was as follows:

By Act of the Legislature approved February 2, 1923 (33 St. at Large, p. 688), Greenville Chamber of Commerce is given the sole and exclusive control until March 31, 2023, of the former Courthouse belonging to Greenville County, situate on the east side of Main street, in the middle of Court street, in the city of Greenville, together with the land upon which the building is situate, and such other land adjacent thereto as may be considered by the directors of the Chamber of Commerce advisable for erecting a new building thereon, if the City Council of Greenville shall consent to the occupation of such additional land. The Chamber of Commerce is authorized to borrow money to erect a new building, and to mortgage the land and new building up to March 31, 2023, at which time the control of the property by the Chamber of Commerce shall cease, and the site and building become the absolute property of Greenville County, free of all incumbrances. The building may be used by the Chamber of Commerce; but it shall provide a rest room or rooms for the people of Greenville County and an office for the County Demonstration Agent. Any portion of the building not needed for those purposes may be leased by the Chamber of Commerce; all surplus income to be equally divided between the Chamber of Commerce and the county of Greenville. The City Council has agreed to execute to the Chamber of Commerce a quitclaim deed to a strip of land immediately in rear of the present building. Part of this strip is occupied by a flower bed inclosed by a curbstone; the remainder is a part of East Court street. The Chamber of Commerce has negotiated a loan of $250,000 from an insurance company for the erection of the new building.

The plaintiff asks an injunction upon the ground that the said Act of 1923 is unconstitutional in that it attempts, in violation of Article 3, § 31, of the Constitution of 1895,

to authorize a donation to a private corporation of public property which is either owned or controlled by the State of South Carolina, or by Greenville County, or by the city of Greenville, or the beneficial use of which is vested in Greenville County, subject to the control of the General Assembly; also, that said Act relates to more than one subject, and thus contravenes Article 3, § 17, of said Constitution.

The answer of Greenville County attacks the Act upon the same grounds, and upon the ground that the Act purports to empower the County to engage in the renting of property to private individuals, to engage in private business outside the scope of county government, and to participate in the rents and profits of the building to be erected, thus engaging in joint ownership and partnership with a private corporation, and violating Section 6 of Article 10 of said Constitution.

The land in question and all other land in that portion of what is now the city of Greenville formerly belonged to Lemuel J. Alston. His unknown heirs were made parties defendant and served by publication. No answer has been filed on behalf of any of them. The defendant city of Greenville answered, admitting that it has agreed to execute to Greenville County a quitclaim deed conveying all its interest in a certain strip of land immediately in rear of the building in question for the sole purpose of permitting the Chamber of Commerce to erect thereon an eight or ten story office building. The answer alleges that this strip of land and the lot upon which the building in question now stands are portions of Court street, and were laid out and dedicated to the public for street purposes by Lemuel J. Alston. It denies that Greenville County is the owner of the land upon which said building now stands, or that the land was ever dedicated to the County for the purpose of erecting a Courthouse thereon. It alleges that the land so dedicated to the County for a Courthouse was

in the center of Main street, in front of the building in question.

The defendant Greenville Chamber of Commerce answered, denying any infringement of the Constitution.

By agreement, the case was argued and submitted to me at Chambers on August 3, 1923. The fundamental question submitted for the decision of the Court is whether the land now occupied by the old Courthouse (sometimes referred to as the "Record Building") and the land immediately in rear thereof were dedicated by Lemuel J. Alston to the public, and, if so, for what purpose. Upon this foundation the whole superstructure rests.

It is admitted that no deed to this property was executed by Mr. Alston, and that the decision of this question depends upon plats. It is admitted that the plat filed in the office of the Register of Mesne Conveyances for Greenville County in Deed Book E, at page 62, is the original "chart of the village of Pleasantburg," by which the village (now the city of Greenville) was laid out by Lemuel J. Alston, and which is referred to in numerous subsequent deeds. On this plat the Court House is shown in the middle of the intersection of two streets, now known as Main Street and Court Street. The Court House is shown on said plat as surrounded by an open space, from which the plaintiff and the county of Greenville argue that such open space must necessarily be considered a public square or Courthouse square (though no such words appear on the plat), and that the inference is irresistible that such open space was dedicated for that definite specific purpose. This inference appears forced and unsupported by anything appearing upon the plat. Just east of the Courthouse the jail is indicated on said plat in the middle of what is now Court street. If the mere placing of the Courthouse in the middle of an open space makes that space "Courthouse square," it may be said with equal force that the placing of the jail in an open space renders that open space "jail

square." Both the Courthouse and the jail were moved long ago to other locations. It is admitted that the spaces on said plat then occupied by the Courthouse and jail have been used as streets for about 100 years. A glance at the plat will show that the open spaces immediately surrounding both the Court House and the jail must necessarily have been used as streets at that time; otherwise both streets would have been completely blocked at those points, and the public could not have used them at all. At the time (prior to 1795) when Lemuel J. Alston laid out the village and had this plat made, he must have intended, therefore, that the open spaces surrounding the Courthouse and the jail should be used as streets. This conclusion is rendered inevitable by an inspection of the plat. Mr. Alston could not possibly have intended to interrupt absolutely the two main streets of the village. It is equally clear that those open spaces must have been used by the public, not only to obtain access to the courthouse and to the jail, but to pass along what is now Main street and along what is now Court street; in no other way could the public have used either of these streets. It is impossible to escape the conclusion that the open spaces surrounding the Courthouse and the jail were dedicated by Mr. Alston to the public for street purposes, and were so accepted by the public, and that when the Courthouse and the jail were removed from the sites on which they were shown on said plat, those sites also became portions of the streets.

The burden is upon the plaintiff and upon Greenville County to establish by the greater weight of the evidence their claim that the open space surrounding the former site of the Courthouse was definitely and specifically dedicated to the public as a "square" or "Courthouse square"; for they are attacking the constitutionality of an Act of the Legislature presumed to be valid unless the contrary shall appear. This presumption of

validity extends to everything in the Act and to everything upon which the Act is based. If the plaintiff and Greenville County claim that the dedication was not general in its nature, or for street purposes, but was clearly and definitely for some other purpose, it is incumbent upon them to show that such was the case, and to prove the specific purpose for which the dedication was made and accepted. They have submitted no proof as to any specific purpose. They have not even introduced testimony tending to contradict the dedication for street purpose. The word "square" does not appear upon the original chart in question, nor upon any of the subsequent city plats introduced in evidence; nor is there any testimony before the Court tending to show that the open space in question was ever called "Courthouse square."

It being clear that the dedication of the open space by Mr. Alston was for street purposes, it cannot be asserted that Greenville County has any special or peculiar interest in or control over the open space in question. The dedication was not to Greenville County, but to the public at large, though the land is situated in the County of Greenville and in the City of Greenville. 3 Dillon, Municipal Corporations (5th Ed.) 1122.

Under the general laws of South Carolina, these public highways were under the control of Greenville County until the incorporation of the village of Greenville by Act of December 17, 1831 (see 6 St. at Large, 434), which invested the intendant and wardens of that village "with all the powers granted by law to the commissioners of roads." Under the provisions of the Act of 1901, incorporated as Section 2931 of the Code of 1912, the city of Greenville surrendered its special charter and accepted incorporation under Article 3 of Chapter 48 of that Code. Under Section 2951 of that Code the City Council is vested "with all the powers, rights and privileges within the limits of said city that are now given, or that

may hereafter be given to the County Board of Commissioners of the several counties of this State as to the public roads." Under Section 2926 of that Code, "the said City Council shall have, and is hereby given, the further authority to lay out and open new streets in said city, and to close up, widen, or to otherwise alter those now in use, or those which may hereafter be established, whenever, in their judgment, the same may be necessary for the improvement or convenience of said city." The usual effect of statutes of this sort is to transfer from the county authorities to the village, town, or city the power to regulate and control highways. 3 *Dill. Mun. Corp.* (5th Ed.) 1138; 1 *Elliott on Roads and Streets* (3d Ed.) 543; *City of Columbus v. Ogletree,* 102 Ga., 293; 29 S. E., 749. The right of control thus vested in the city, however, is derived from the Legislature, which represents the public at large, and has "paramount authority over all public ways and public places." 3 *Dill Mun. Corp.* (5th Ed.) 1122.

The Legislature may legalize obstructions in streets which otherwise would be deemed n u i s a n c e s.

"Whatever the Legislature may constitutionally authorize to be done is of course lawful, and of such acts, done pursuant to authority given, it cannot be predicated that they are nuisances; if they were such without, they cease to be nuisances when having the sanction of a valid statute. As respects the public or the municipalities themselves, there is, in the absence of special constitutional restriction, no limit upon the power of the Legislature as to the uses to which streets may be devoted." *Id.,* 1122, 1128, 1160, 1097. *Elliott on Roads and Streets* (3d Ed.) 1177, 1182, 1183, 509. *Note to Moffit v. Brainard,* 26 L. R. A., 821. *Paul v. Carver,* 24 Pa. 207; 64 Am. Dec., 649.

It appears, therefore, that the power of the General Assembly over a street is so sweeping that its action in vacating the highway can be attacked only

upon constitutional grounds. Three such grounds are alleged in this case.

The first is that the Act makes a donation of public property to a private corporation. This position is shattered by *Haesloop v. City Council of Charleston* (S. C.), 115 S. E., 596, upholding the right of the city to give a lot of land, free of charge, to a corporation on condition that it would erect thereon a hotel costing $1,000,000. The Court decided that the constitutional prohibition contained in Article 3, § 31, of the Constitution of 1895, referred only to "public lands belonging to and controlled by the State in its capacity as sovereign proprietor," and did not apply to land previously granted by the State. It is also held that the proposed grant was "not a donation in the prohibited sense of being a gift, a gratuitous bestowal or appropriation, a grant without any consideration," but that the taxes which would be received by the city upon additional taxable property worth $1,000,000, and the general public benefits resulting from the establishment of such a hotel constituted a valid and valuable consideration for the grant. That case is conclusive on this point. The giving by the Legislature of the exclusive control of the old Courthouse to the Chamber of Commerce is not a donation. The erection of an eight or ten story office building upon the site in question will increase the value of all property in the neighborhood. By reason of such increased value, the City, County and State will receive more taxes during future years than if the improvement had not been made. Of these three, the county has least cause for complaint; for it receives especial benefits not accruing to the City or to the State. The County does not own the site of the old Courthouse—or of the new one either, for that matter. Both have been built in the middle of Court Street, by acquiescence of the City of Greenville. The county's occupation of these two sites is analogous to that of a tenant at will. Since 1916 the

county has abandoned the old Courthouse, except that it has the use of a portion of it as a rest room and another portion as the office of the County Demonstrator. Under the terms of the Act in question, the county will continue to have the use of offices for this purpose. It will have one-half of the surplus rents from the property. On March 31, 2023, it will receive an eight or ten story office building, without paying one cent toward its construction, and on that day it will acquire, without cost, absolute title to the lot of land approximately 45 x 62 feet now covered by the old Courthouse and the lot of land approximately 45 x 47 feet immediately in the rear thereof; both these lots being covered by the new building to be erected thereon by the Chamber of Commerce. Neither one of these lots now belongs to Greenville County. Of the first it is a tenant at will; the second is a part of East Court street. The county of Greenville certainly is not in a position to deny that it will reap princely rewards by surrendering something which in fact does not belong to it, but to the public at large.

The second ground of attack is that the Act relates to more than one subject, in violation of Section 17 of Article 3 of the Constitution. "It is well known that the provision of an Act devoted to one subject matter fills the requirements of this section of the Constitution." *State v. Franklin,* 80 S. C., 332; 60 S. E., 953. The various provisions of the Act in question do not relate to several distinct subjects, but rather to several phases of the same general subject. *Aycock-Little Co. v. Sou. Ry. Co.,* 76 S. C., 331; 57 S. E., 27. *State v. Fant,* 88 S. C., 493; 70 S. E., 1027. *Croft v. Sou. Cotton Oil Co.,* 83 S. C. 232; 65 S. E., 216. *Riley v: Union Station Co.,* 71 S. C., 457, at page 487; 51 S. E., 485; 110 Am. St. Rep., 579. *State v. Hunter,* 79 S. C., 91, at page 96; 60 S. E., 226. *Jellico v. Commissioners,* 83 S. C., 481; 65 S. E., 725. *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421.

The third ground of attack alleges infringement of the following provision of Section 6 of Article 10 of the Constitution: "The credit of the State shall not be pledged or loaned for the benefit of any individual, company, association or corporation; and the State shall not become a joint owner of or stockholder in any company, association or corporation."

It is difficult to see how this section may be deemed relevant to the Act in question. The latter does not pledge the credit of the State in any particular, nor does it make the State a joint owner of any company, association or corporation, or a stockholder therein. The words of this section of the Constitution are inapplicable to the Act in question. It is argued by the County Attorney that the Act is violative of the spirit of this constitutional provision;but in determining such a question the Court is not "to be controlled by any unexpressed spirit or public policy supposed to underlie anl pervade the instrument." *Lillard v. Melton,* 103 S. C., 10, at page 23; 87 S. E., 421. If the supposed intention of this section of the Constitution could be considered apart from the words used therein, it doubtless would be admitted that the idea was to prevent the State from entering into business hazards which might involve obligations upon the public. Nothing of the sort would be possible under this Act. No liability could attach to the State, or to the county, or to the city. If the placing of the building and the site under the control of the Chamber of Commerce could be deemed a lease by the State, or by the county, or by the city, it would be only what has been upheld repeatedly in this State and in other States. *Jones v. Camden,* 44 S. C., 319; 23 S. E., 141; 51 Am. St. Rep., 819. *State v. City of Columbia,* 115 S. C., 108; 104 S. E., 337. There is no joint ownership; there is no partnership. The new building is to belong absolutely to the Chamber of Commerce until March 31, 2023; after that date it is to belong

absolutely to the county of Greenville.  One-half the surplus rents from the building will be paid to the county before that date.  All of the rents will go to the county after that date.  As expressed by Chancellor Waites in *Byrne's Adm'rs v. Stewart's Adm'rs,* 3 Desaus., 476 (quoted in *Massey v. Glenn,* 106 S. C., at page 73; 90 S. E., 323): "The validity of a law so obviously repugnant to the Constitution, that when pointed out by the Judges, all men of sense and reflection in the community may perceive the repugnancy."  Or, as expressed in *City of Columbia v. Smith,* 105 S. C., at page 353; 89 S. E., 1030: "It is well settled that the presumption is that legislative enactments are constitutional, and no such enactment ought to be declared invalid unless its unconstitutionality is made to appear beyond all reasonable doubt."

The attacks on constitutional grounds having failed, it is clear that the Legislature had the power to pass the Act in question.  "The power being conceded, the wisdom or policy of legislation is for the Legislature alone.  Hence, though we may differ with the Legislature as to the propriety of the law, we must sustain its validity, if it be possible to do so, by any reasonable construction of the Constitution."  *Bradford v. Richardson,* 111 S. C., 205 at page 215; 97 S. E., 58, 61.  Evidently the Legislature believed the Act to be for the best interests of the public.  Evidently the city of Greenville shares that belief.  Evidently the neighboring property owners also do; for they have given their consent to the erection of the proposed building.  The heirs of Lemuel J. Alston, even if they had not failed to answer, would not be in a position to object.  The land, having been dedicated by Mr. Alston for street purposes, is under the control of the Legislature, as the representative of the public; and its control is not subject to attack, except upon constitutional grounds.  When Mr. Alston conveyed the lots adjoining the streets surrounding the old Courthouse, he eliminated any possibility of a reverter to

his heirs. Any possible reverter would be to the abutting property owners; and they are estopped by their consent.

It is ordered, adjudged and decreed:

That the land upon which the present old Courthouse or record building stands, as well as the land immediately in rear thereof, was dedicated by Lemuel J. Alston to the public for street purposes.

That Lemuel J. Alston retained no possibility of reverter in such land, and that his heirs be, and they are hereby, barred from all right, title, interest, estate, and claim of any and every sort therein.

That the Act in question is valid and constitutional in all respects.

That the complaint herein be dismissed.

The evident intention of the Legislature was that Greenville County should have sufficient space in the proposed building for its present needs and for those which may be anticipated for a reasonable time to come. According to the architects' plans of the proposed building, the basement or lower ground floor is allotted to the county. It appearing to the satisfaction of the Court that said floor is adequate for those needs, and the attorneys for the Chamber of Commerce consenting, it is further ordered that said floor be set aside for county purposes, to be used in such manner as the legal custodian of the Greenville County courthouse may direct from time to time.

August 20, 1923.

*Mr. W. G. Sirrine,* for plaintiff-appellant, cites: *Act 1923 is unconstitutional,* Const. 1895, Art. 3, Sec. 31.

*Mr. Oscar K. Mauldin,* for Greenville County, appellant, cites: *Dedication:* 7 A. & E. Enc L., 43; 5 Strob., 217; 8 R. C. L., 834; 27 L. R. A. (N. S.), 875. *Greenville County chartered:* 7 Stat., 245. *Court House authorized:* 5 Stat., 230. *City of Greenville incorporated:* 6 Stat., 434. *Land must be used for purpose for which it was dedicated:* 8 R. C. L., 910, 911; 48 N. E., 927; 61

Pac., 237; 2 S. W., 130; 22 Pac., 528; 23 Am. Dec., 207; 97 Am. Dec., 696; 35 L. R. A. (N. S.), 603. *Chamber of Commerce is a private corporation*: 7 A. & E Enc. L., 637, 638. *Unlawful for city to go into hotel business*: 42 S. C., 427; 41 S. C., 220; 57 N. W., 331

*Messrs. L. O. Patterson* and *Stephen Nettles,* for Greenville Chamber of Commerce, respondent, cite: *No limit on power of city to vacate portion of street:* 3 Dillon Mun. Corp., 5th Ed., 1122, 1128, 1138, 1160, 1197; Ell. Roads & Streets, 3d Ed., 609, 543, 1177, 1182, 1183; 13 R. C. L., 67. *Vacation is authorized by Legislature in this case*: 33 Stat., 688. *Test is whether use serves public good and advantage*: 115 S. E., 596; 115 S. C., 108.

December 10, 1923.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Mauldin, in his Circuit decree, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

---

### 11366

#### STATE v. SULLIVAN

#### (121 S. E., 47)

1. CRIMINAL LAW—SERVICE AT DEFENDANT'S RESIDENCE OF NOTICE OF RULE TO SHOW CAUSE WHY SUSPENDED SENTENCE SHOULD NOT BE MADE EFFECTIVE HELD SUFFICIENT.—Where a rule to show cause why a suspended sentence should not be carried into effect for a violation of the terms thereof was not served on defendant personally, but was left at his residence with a proper person, and defendant employed counsel to represent his interests at the hearing and endeavored to avoid personal service, *held,* that the service of the notice was sufficient.

2. CRIMINAL LAW—INTERPOSING OBJECTION INVOLVING MERITS WAIVER OF DEFECTIVE SERVICE OF NOTICE.—Interposing objection involving the merits of the case *held* a waiver of defendant's right to raise the objection that he had not been personally served with a copy of a rule to show cause why suspended sentence should not be carried into effect.