18782

Harry TYLER *et al.,* Respondents, v. Fred P. GUERRY, Agnes C. Martin and Catherine C. Guerry, Appellants

(160 S. E. (2d) 889)

*Messrs. Zeigler & Townsend,* of Florence, *for Appellants,*

*LaNue Floyd, Esq.,* of Kingstree, *for Respondents,*

April 17, 1968.

LITTLEJOHN, Justice.

This action is brought by several plaintiffs against the owners of a tract of land to determine the rights of the plaintiffs, and the right of the public, to use two roads which connect a public road to a recreational area referred to as Brown's Landing on the bank of Black River.

The two roads are each approximately two-tenths of a mile in length, and after leaving the public road, one crosses first the land of Walters and the other first the land of Brown, and then cross land of the defendants, who own to the bank of the river, including the recreational area re-

ferred to as Brown's Landing, and a club house. One road, referred to as the old road, has been in existence for more than 50 years; the other road, referred to as the new road, was built and put into use about 10 years ago.

The complaint alleges that people generally have used the old road for a period of more than 50 years, and alleges that the right of the public to use that road has been acquired by prescription. It is contended that the new road, almost paralleling the old road, was built about 10 years ago by the county and that the land on which it is built was dedicated by the defendants and/or their predecessor in title for public use. The complaint further alleges that the defendants caused ditches to be dug across both roads, preventing the plaintiffs and others from using the same and from reaching Brown's Landing. The plaintiffs ask that the defendants be enjoined from interfering with the use of both roads and the use of the landing.

The answer of the defendants alleges that they own, to the exclusion of all others, a tract of land containing 243 acres on Black River, including the recreational area and the land crossed by a portion of both the old road and the new road. The answer prays that the plaintiffs and the public be declared to have no interest in either of the roads or the landing.

The lower court heard the evidence and ruled in favor of the plaintiffs, holding that an easement by prescription had been acquired to the old road, and holding that the landowners had dedicated the new road to the use of the public. That court ordered the defendants to fill the ditches, remove obstructions and not to interfere with the public's use of the landing.

By proper exceptions the landowners raise two questions for determination by this court: first, have the plaintiffs established by the preponderance of the evidence, an easement across the defendants' land; and secondly, have the plaintiffs established a dedication by the landowners of the new road?

·The land of the defendants was procured by their father in 1939. About 1955 their father became disabled and his son, Fred P. Guerry, one of the defendants, took over the management and control of the property. The father died in 1960.

There are several facts which are virtually undisputed. A limited number of local people, including some of the plaintiffs, have used the old road as an access to the bank of the river for more than 50 years for the purpose of swimming, fishing, picnicking, and occasional baptizings. Some of them obtained permission from the landowners and some did not. The old road was narrow, crooked, and ran through woodlands to a cleared area on the bank of the river. When the new road was built about 10 years ago the use of the old road was abandoned and it has become grown up and is very nearly impassable.

Although the area is designated by name as a landing, the evidence does not support an inference that it is a landing in the usual or legal sense of the word. The case of *State v. Randall*, 1 Strob. 110, defines a landing as follows:

"A landing is a place on a river or other navigable water for lading and unlading goods, or for the reception and delivery of passengers."

· Of the more than 30 witnesses who testified, many of them relative to the use of the river bank, only one commented about putting a boat in at this location. We conclude that any rules of law relative to landings are not applicable under the facts of this case. We have simply two roads connecting a public highway with the bank of the river and a club house owned by the defendants

In 1958 the county supervisor charged with road maintenance, cut a new road from the public highway to the river area. The defendants and/or their predecessor in title supplied the drainage pipes and a portion of the labor. Such negotiations for road construction as

took place were informal and oral. The evidence shows that it was customary for county road officials to assist landowners on private property in building and maintaining plantation avenues or lanes to houses owned by individuals. It is obvious that the county authorities helped with the building of this road at the request of the landowners and not because the public interest required it. The fact that the landowner supplied labor and materials is completely inconsistent with a dedication and with the construction of a road for the use of the public. We need not here determine the legality of the action of those who use county road-building equipment on private property.

After the new road was built people continued to use the river bank and the new road, some with permission and some without permission. About 1961 or 1962 the defendants placed a no trespassing sign above the road in hopes that the same would deter the use of the roadway and of their property, but people continued to use the road and the river bank, and in October 1966 the landowners first blocked the road with chains and barbed wire, which were removed by unknown persons, and then ditched the roads in order to prevent the use of both of them.

Since this is an equity case heard and determined by the circuit judge without a reference, we review the factual findings of the lower court in the light of the principle of law that this court may make separate findings if we conclude that the findings of the lower court are against the preponderance of the evidence. *Forester v. Forester*, 226 S. C. 311, 85 S. E. (2d) 187.

We rule first upon the rights of the parties as relate to the old road. The evidence preponderates to the effect that people living in the general area had, through tolerance of the landowners if not with acquiescence, used the old road and the recreational area for more than 50 years. We have held that the usages of the river bank had not been such as to qualify it as a landing. We have, therefore, not in question a road which connects two

public roads, nor a road which connects one public road with a public waterway. There is, instead, a road across the land of two owners, ending on the land of one of them. The property of these defendants is shown to be unenclosed and unimproved woodland and the mere use of what is referred to as the old road does not give rise to a right-of-way by prescription. See 26 C. J. S. Dedication § 20, p. 436. We therefore hold that the lower court erred in ruling that a right-of-way by prescription had been acquired to the old road.

The other question for determination by this court is: have the plaintiffs met the required burden of proof to show that there was a dedication of the new road by the defendants and/or their predecessor in title? To show such a dedication the law required a higher degree of proof than "by the preponderance of the evidence." The degree of proof required is set forth in the case of *Seaboard Air Line Railway v. Town of Fairfax;* 80 S. C. 414, 61 S. E. 950, wherein this court said:

"'* * * Dedications being an exceptional and a peculiar mode of passing title to interest in land, the proof must usually be strict, cogent, and convincing, and the acts proved must not be consistent with any construction other than that of a dedication.' See, also, 13 Cyc. p. 442, where it is held as follows: 'It is a necessary conclusion that no one except the owner of an unlimited estate in fee can make a dedication of land.' Again, at page 475 of same volume, it is said: 'The burden of proof to establish a dedication is upon the parties setting it up.' "

Normally, a written instrument is required to pass title to real estate. Dedication of land for a roadway is a method of conveying interest in real estate from the owner to a governmental agency. Section 33-811 of the Code provides that county governing bodies may procure rights-of-way for public roads by gift or purchase or condemnation. There is no contention that the land involved has been procured by purchase or condemnation. Those who would assert that

the owners gave the property and parted title with the same should be required to definitely prove a gift of interest in real estate by evidence which is cogent and convincing. We do not think that the plaintiffs in this case have met the burden of proof. The fact that the county road-building authority assisted the landowners by supplying labor and equipment is not conclusive, nor is the fact that the road may have been worked occasionally controlling. It is obvious that the road supervisor has performed similar services for many landowners in the improvement of lanes and avenues leading to private homes. Certainly the action of the county has not been of such character that this section of road has become a part of the county system, nor of such character that the county could be held liable for injuries caused by reason of a defect in the new road. There has been no such dedication and acceptance by the county that maintenance and repair could be demanded as a matter of right by interested persons or by the public.

We therefore hold that the lower court was in error when it held that there had been a dedication of the new road.

The plaintiffs and the public have no right to use either of the roads nor the recreational area referred to as Brown's Landing, and the lower court is

Reversed.

Moss, C. J., and Lewis, J., concur.

Bussey and Brailsford, JJ., disqualified.