## 20770

The STATE of South Carolina, Appellant-Respondent, v. The BEACH CO. and Gulf-Stream Dredging Company, Inc., Respondents-Appellants.

(248 S. E. (2d) 115)

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Kenneth P. Woodington,* and *Deputy Atty. Gen. Victor S. Evans,* Columbia, *for appellant-respondent.*

*Edward D. Buckley, Leonard L. Long, Jr., Ellison D. Smith, IV.,* and *Peter D. DeLuca, Jr.,* Charleston, and *Ronald L. Motley,* Barnwell, *for respondents-appellants.*

September 21, 1978.

*Per Curiam:*

The Isle of Palms is a sea island located north and east of the City of Charleston. It is somewhat drumstick in shape, with an ocean front beach of approximately seven miles and a depth of about one mile.

The State of South Carolina commenced this action in January, 1975, alleging that certain rights of the public to use of a beach front area on the island had been intruded upon by the defendants; it asked a temporary and permanent injunction prohibiting such intrusion or interference in the future. The action was commenced because The Beach Co., through Gulf Stream Dredging Company, Inc. (a nominal party not referred to hereafter), began bulldozing and leveling a 25 acre area of the 65 acres of sand dunes on the western ocean-front portion of the island, in preparation for development and use of the land.

The real issue in the case is whether the public in general has acquired a permanent easement or prescriptive right

of user over the area in question, which effectively prohibits sale or development of it by the owner of the fee simple title, which is The Beach Co.

Several other actions have been commenced by individual owners of lots against The Beach Co., apparently seeking similar injunctive relief. This action does not and cannot decide whether any or all of them have acquired private easements or rights of user. The sole issue before us involves the right of the State and the right of The Beach Co. as relates to an alleged dedication of user to the public.

Until the turn of the 20th century, the island was an uninhabited semi-tropical barrier island, stretching from Breach Inlet on the west to Dewees Inlet on the east. It is bounded on the South by the Atlantic Ocean and on the north by a creek. A part of the island was subdivided and used in a limited way for resort purposes beginning about 1898; about 1926, an auto bridge connected it with the mainland. Thereafter, the sale of lots and the building of residences was accelerated, but it was not until about the end of World War II that it became truly a popular resort area. In 1946, The Beach Co. acquired, by deed, what might be described as all of the undeveloped areas composing the island. It has been stipulated that:

*"The Beach Co. Has Fee Simple Title To The Areas In Question, Including All Accretions; The Plaintiff Claims That The Beach Co's Title Is Subject To . . . Easements By Dedication As May Exist."* (Emphasis added.)

Several plats have been made and recorded showing the areas involved in this action. Some of the streets appear to remain as originally designated on the first plat. Other streets have been changed by the developer, and at least one change in the streets has been authorized by an act of the legislature in 1927. The auto bridge connecting the island with the mainland approaches the island at its most westerly point. Several streets run parallel to the ocean front.

Included is one shown on the plats as Ocean Drive. It is almost adjacent to the ocean front, but a strip of dry land in varying widths was left between Ocean Drive and mean high-water. It is this strip of undeveloped land which gives rise to the controversy before us. Beginning at the western tip of the island, streets run approximately perpendicular to the ocean, but have not, according to the plats, been extended southward across Ocean Drive. The litigation before us involves the area beginning at the western end of the island and running as far east as 21st Street[1], which is perhaps a fourth of the length of the island.

Although Ocean Drive is shown on plats from the bridge proceeding easterly, it has never been opened for use between the bridge and Fourth Street; it has been opened and has been in long use east of Fourth Street.

The area in dispute involves approximately 115 acres of land[2] bounded on the south by the high water mark of the Atlantic Ocean, on the West by Breach Inlet, on the north by the right-of-way for Ocean Drive, and on the east by an extension of the right-of-way for 21st Street. It would appear that prior to the 1940's the disputed area was a comparatively narrow (varying in depth) strip of dry land between the south side of Ocean Drive right-of-way and the mean high-water mark. Since that time, through process of natural accretion (deposits of shifting sands), the south oceanside portions of the island (the disputed area) has greatly increased, so that, despite a city ordinance protecting the dunes for 250 feet above high-water mark, The Beach Co. found it feasible to engage in further development of lots.

Lots on the north side (landward) of Ocean Drive, facing the Atlantic Ocean, were apparently sold by reference to a plat designating the southern boundary as Ocean Drive.

[1] Originally the State claimed as far east as 53rd Street, but has now abandoned claim to the additional area.
[2] This includes the accretions.

No reference was made to the Ocean or mean high-water as being the boundary. The development of the property in dispute would convert oceanfront properties to second row properties. The concern of these property owners was the inspiration for the State's bringing this action. Over the years property owners and others have traversed certain portions of the disputed property, going to and from the beach area. It is the testimony of The Beach Co. that from time to time "no trespassing" signs were erected, but were often destroyed by unknown persons, and that such use of the property as was made by the public was permitted by the owner.

The order of the lower court embodied the following findings: (1) that a part of Ocean Drive (from Breach Inlet to Fourth Street) may be opened to the public; (2) that the area from Breach Inlet east to Seventh Street had not been dedicated to the public, but was specifically reserved to The Beach Co., with the exception of the extension of rights-of-way of Inlet Lane, Second, Third, Fourth, Fifth and Sixth Streets, across Ocean Drive to the high-water mark; (3) that the area from Seventh Street to 21st Street had been dedicated to the public through the sale of lots by reference to certain plats; and (4) that The Beach Co. could develop the area between Breach Inlet and Seventh Street, but that it could not bulldoze the sand dunes except where actually necessary for construction of improvements or for other lawful uses; (5) that wholesale levelling constituted a nuisance *per accidens* and was permanently enjoined; and (6) that the request for a mandatory injunction requiring The Beach Co. to artificially reconstitute the dunes was denied. Both the State and The Beach Co. have appealed.

Accretion by natural alluvial action to lands on a navigable stream, such as ocean waters, become the property of the owner of the land accreted or increased. *Eppes v. Freeman,* 261 S. C. 375, 200 S. E. (2d) 235 (1973). By the same token, when land which is so in-

creased is subject to an easement or dedication, the increased area is subject to the same burdens. Therefore, if any of the area in question in this action is burdened with an easement or has been dedicated to public use, the increase or accretion bears the same limitation. If the narrow strip of land originally left between Ocean Drive and mean highwater mark has been dedicated to the public, then the accreted areas are also dedicated to the public. On the other hand, if The Beach Co. has fee simple title to the narrow strip, it has fee simple title to the entire area.

Prior to trial of the case on its merits, The Beach Co. demurred to the State's complaint on the ground that the Attorney General is without authority to bring the action under Article VI, § 7, or Article XII, § 1 of the South Carolina Constitution, or under § 1-7-40, Code of Laws of South Carolina (1976), in that the State does not own the property involved. The lower court overruled the demurrer, rationalizing that it was . . . "an action to protect alleged rights acquired by the public in lands owned or originally owned by the defendant Beach Co." In making the ruling the court relied upon the case *State ex rel. Daniel v. Broad River Power Co.,* 157 S. C. 1, 153 S. E. 537 (1929). That case involved a mandamus action brought to compel the defendant to comply with the requirements of their franchise granted by the State and to continue to operate a trolley-car line in the City of Columbia. We are not at all sure that the facts in the Broad River case are sufficiently analogous to warrant citation as authority. While the Attorney General has broad statutory authority (and arguably common law authority) to institute actions involving the welfare of the State, that authority is not unlimited. No doubt the Attorney General would have authority to bring an action to enjoin the blockage of a state highway, but such authority might not extend to the closing of a city street within a real estate subdivision, even though the street be a dedicated one. The dispute submitted to us

grows out of a conflict of interest between property owners within a real estate subdivision. At the same time, we appreciate the fact that a small segment of the people of the state, over and above the property owners, have, at least arguably, an interest in the outcome of this litigation.

In the light of the view we take of the proof, we find it unncessary to delicately determine the authority of the Attorney General and to precisely define that authority. For the purpose of the opinion we will assume that he had authority to institute the proceeding.

As pointed out hereinabove, it is conceded by the State that The Beach Co. has title to the disputed property unless there has been a dedication to the public use. In this equity action, tried by the judge alone, without a reference, this court may find facts according to its views of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Since the State bases its claim to a recreational easement upon the theory of dedication, we recite briefly the law of dedication. The burden of proof is upon the party claiming the dedication. *Anderson v. Town of Hemingway,* S. C., 237 S. E. (2d) 489 (1977):

It is generally accepted that to constitute a valid dedication, there must not only be an intention on the part of the owner to dedicate a property to the public use, but that such intention must be manifested in a positive and unmistakable manner. It need not be made by deed or other writing, but may be effectually and validly made by acts or verbal declarations. It also may be implied from long use by the public of the land claimed to be dedicated. Absent an express gift, one who asserts a dedication must demonstrate conduct on the part of the landowner clearly, convincingly and unequivocally indicating his intention to create a right in the public. *Derby Heights, Inc. v. Gantt Water and Sewer District,*

237 S. C. 144, 116 S. E. (2d) 13 (1960); *Shia v. Pendergrass,* 222 S. C. 342, 72 S. E. (2d) 699 (1952).

Since we know that individual owners of property are not apt to transfer it to the community or subject it to public servitude without compensation, the burden of proof to establish dedication is upon the party claiming it. *Tyler v. Gurrey,* 251 S. C. 120, 160 S. E. (2d) 889 (1968); 23 Am. Jur. (2d), Dedication, § 75; *Littlefield v. Hubbard,* 124 Me. 299, 128 A. 285, 38 A. L. R. 1306; *MacCorkle v. City of Charleston,* 105 W. Va. 395, 142 S. E. 841, 58 A. L. R. 231.

"Dedications being an exceptional and a peculiar mode of passing title to interest in land, the proof must usually be strict, cogent, and convincing and the acts proved must be inconsistent with any construction other than that of dedication." *Seaboard Air Line Ry. Co. v. Town of Fairfax,* 80 S. C. 414, 430, 61 S. E. 950, 956 (1908).

As pointed out above, the lower court found that the property from Breach Inlet to Seventh Street had not been dedicated to the public, but that the property from Seventh Street to 21st Street had been so dedicated. It was apparently the conclusion of the court that all of the property from Breach Inlet to 21st Street had, prior to 1927, been dedicated. It found that the legislative act of 1927, to which we have referred, effectively removed the area between Breach Inlet and Seventh Street from the area dedicated. We agree that there has been no dedication of the property between Breach Inlet and Seventh Street, but we do not base our conclusion on the act of the legislature. Our study of the act convinces us that the legislature's sole purpose was to authorize the substitution of ". . . the streets, lanes, ways, crossings, drives, and avenues . . ." of the western end of the island from the bridge or Breach Inlet to Seventh Street. The act stipulated that Ocean Drive and properties east of Seventh Street were not affected. The Fuller plat, which the act approved, specified: "The streets, avenues, lanes, ways,

crossings and drives as shown on this plat are dedicated to the public as streets." No reference is made to dedication or use of properties between Ocean Drive and the mean high-water mark.

Our review of the evidence leads us to the conclusion that dedication, meeting the requirements of the rule recited above has not been proved relative to any of the property. No dedication by plat or other written instrument has been submitted to the court. Dedication is not implied from the permissive, sporadic and recreational use of the property, even though some of it has been used extensively.

We have referred to the property involved as a comparatively narrow strip of land, of varying widths, running from Breach Inlet to 21st Street, between Ocean Drive and mean high-water. The plats do not give the depths of the property involved in exact numerical measurements, but all of the plats indicate that some dry land was left at all points between Ocean Drive and the mean high-water mark. The plats vary and the land itself has varied in width from time to time, usually increasing by reason of accretion. While referring to the strip of land involved as being comparatively narrow, it has been sufficiently wide in the Tenth Street area and eastward toward 21st Street to provide for considerable development. On this widened strip, The Beach Co. erected a motel and constructed a fishing pier some 25 years ago. It also developed (and, until the time this litigation commenced, permitted the public the use of) a picnic area, and has built a retail sales place and/or entertainment area, uncharitably referred to by some of the witnesses as a "honky-tonk". In addition, there is abundant evidence that people in general, including governmental entities, have long recognized the asserted control of The Beach Co. over the property involved, by asking its permission, etc., for the use of the property from time to time.

Until the beginning of this litigation, there would appear to have been little or no contest of The Beach Co's asserted property rights in the land and the improvements.

The court erred in finding that the State had proved its case, and erred in failing to dismiss the entire action. It becomes unnecessary to rule upon other issues raised by the parties. All have been considered and found without merit.

The recent case of *Smith v. Bruce,* 241 Ga. 133, 244 S. E. (2d) 559 (1978), relied upon by the State, has been given our attention. While many of the facts are similar, it is not persuasive. The court applied a principle of law well established in this state in holding that a real estate subdivider and his successors are bound by the terms of a plat from which lots are designated and sold. Unlike the case before us, the opinion states that the subdivider made ". . . deeds reciting that certain lots are bound on the east by the Atlantic Ocean . . ." and states that the subdivider issued ". . . documents not to obstruct the view [of the ocean] . . ." The evidence warranted the conclusion that easements had been granted, and the Supreme Court of Georgia so held.

It is perhaps unnecessary to a disposition of the issues before us to affirm the right of The Beach Co. to extend the rights-of-way of Inlet Lane, Second, Third, Fourth, Fifth and Sixth Streets, and to affirm the right of the public to use these streets. The lower court declared these rights and neither party has excepted. The State has failed to establish any right to this property inconsistent with The Beach Co.'s asserted intent to open these streets and open Ocean Drive from Breach Inlet to Fourth Street. Whether any individual or property owner has a right to contest any such action is not a question before the court at this time.

Insofar as the lower court held that there was no dedication of the property between Breach Inlet and Seventh Street, the order is affirmed.

Insofar as the order held that there was a dedication of the property between Seventh Street and 21st Street, the order is reversed.

Affirmed in Part;

Reversed in Part.