23556

Charles F. HELSEL, Judine B. Helsel, and Helsel Realty Company, Inc., Appellants-Respondents v. The CITY OF NORTH MYRTLE BEACH, Respondent-Appellant.

(413 S.E. (2d) 821)

Supreme Court

*Howell V. Bellamy* and *Preston B. Haines, III,* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Powers, P.A.,* Myrtle Beach, *for appellants-respondents.*

*Louis M. Cook,* N. Myrtle Beach, and *Roy D. Bates,* Columbia, *for respondent-appellant.*

Heard Nov. 21, 1991.

Decided Jan. 13, 1992.

HARWELL, Justice:

Appellants-Respondents Charles F. Helsel, Judine B. Helsel, and Helsel Realty Company, Inc. (the Helsels) contend the trial judge erred in ruling that a street end was dedicated to the public. We affirm.

## I. FACTS

The Helsels sought a declaratory judgment and an injunction prohibiting the City from exercising authority and control over a portion of a street end which provides public parking and access to the beach. The Helsels contend they possess exclusive parking rights on the section of the street end which borders their lot.

The street end originally was a portion of undeveloped property lying within a tract of land in what used to be known as Windy Hill Beach.[1] The original owner subdivided the tract into lots for development, recorded a plat of the proposed subdivision in the Office of the Horry County Clerk of Court in 1941, and sold lots in accordance with the plat. The plat shows Windy Hill Road running east-west, terminating at the beach. The plat also shows that Lot 12, now owned by the Helsels, is a corner lot bounded to the east by the beach, to the south by Lot 11, to the west by Ocean Boulevard, and to the north by the Windy Hill Road street end.

A motel was constructed on Lot 12 in 1962. The motel occupies nearly the entire lot, leaving little room on Lot 12 available for guest parking. Each owner of the motel has posted "private parking" signs facing the street end in an attempt to reserve guest parking in the street end alongside of the motel.

The City passed a general resolution in 1971 formally accepting all public roads, alleys, and rights-of-way within its venue. At that time, the City was not cognizant of the exact boundaries of many of the public roads, alleys, and rights-of-way it accepted. The City passed a second resolution in 1989 formally accepting, by specific property description, many public street ends, walkways, and public lands dedicated for the use of the public, including the street end abutting Lot 12.

## II. DISCUSSION

Perfecting a dedication of property to public use involves two steps. First, an owner must express an intention to dedicate his property to public use in a positive and unmistakable manner. *Boyd v. Hyatt*, 294 S.C. 360, 364 S.E. (2d) 478, 480 (Ct. App. 1988). Second, there must be a

---

[1] Windy Hill Beach, Cherry Grove, Ocean Drive, and Crescent Beach were incorporated into North Myrtle Beach in 1968.

public acceptance of the property offered for dedication. *Id.* at 365, 364 S.E. (2d) at 481.

As to the first step, the Helsels urge that the 1941 plat ■ merely implies an offer of dedication to the public of the streets shown on the plat. We disagree. Where land is divided into lots according to a plat, showing streets, and lots are sold and conveyed with reference to said plat, the owner thereby dedicates the streets to the use of the lot owners, their successors in title, and the public. *Blue Ridge Realty Co. v. Williamson,* 247 S.C. 112, 118, 145 S.E. (2d) 922, 925 (1965). We find that the acts of the original owner in developing the property in accordance with a recorded plat evidence an intent to dedicate the street end to public use.

As to the second step, the Helsels assert that even if ■ the original owner made an offer of dedication, there was no acceptance by the public. There ordinarily must be an express or implied acceptance of a dedication before the dedication is complete, and such acceptance must be made within a reasonable time. *Outlaw v. Moise,* 222 S.C. 24, 30, 71 S.E. (2d) 509, 511 (1952). No formal acceptance by a public authority is necessary to complete the dedication; acceptance may be implied by the public's continuous use of the property. *Boyd,* 294 S.C. at 365, 364 S.E. (2d) at 481. Acceptance of an offer of dedication also may be recognized through a public authority's using, repairing, or working the streets. *Chaffee v. City of Aiken,* 57 S.C. 507, 513, 35 S.E. 800, 802 (1900).

The City presented testimony at trial from long term ■ residents of North Myrtle Beach which demonstrated that the street end has been utilized continuously by the public for beach access and parking since the road was opened in 1942.[2] The City also presented testimony showing that public authorities have maintained and policed the street end since at least 1944. We find sufficient evidence in the record to indicate the offer of dedication was accepted through continuous public use as well as through maintenance by public authorities for a period in excess of forty-five years. Moreover, city officials testified that the street end is identified on tax maps as part of the street and is not subject to tax.

---

[2] It appears the public's use of the street end was extensive enough to force owners of the motel to attempt to prohibit the public from parking in the area.

Nonassessment of taxes on land may be considered in conjunction with other facts to show there has been a dedication and acceptance. *Cf. Anderson v. Town of Hemingway*, 269 S.C. 351, 237 S.E. (2d) 489 (1977).

The Helsels further contend that because the Lot 12 owners' exclusive use of the street end for private parking predated the incorporation of the City, the City could formally accept only the portion of the street end not claimed by the Helsels. We disagree. The street end was dedicated to the public at large, not to the City. The City took control of the street end by authority derived from the Legislature, which represents the public at large. *See Chapman v. Greenville Chamber of Commerce*, 127 S.C. 173, 120 S.E. 584 (1923). The two resolutions formally accepting offers of dedication memorialized the acceptance of the offer of dedication of the street end which already had been implied through public use and through maintenance of the street end by public authorities.

The Helsels next urge that even if the street end were dedicated to the public, the City should be estopped from exercising authority and control over the portion of the street end claimed by the Helsels because it failed to deter the Helsels from claiming exclusive use of the street end. We disagree. The deed conveying Lot 12 to the Helsels incorporated the subdivision plat by reference. Where a deed describes land as shown on a certain plat, the plat becomes part of the deed. *Blue Ridge*, 247 S.C. at 118, 145 S.E. (2d) at 924. The Helsels therefore are charged with knowledge that the street end had been offered for dedication to the public and could not be converted to private use. The Helsels also are charged with knowledge that they purchased nothing outside the boundaries of Lot 12. Estoppel cannot exist where the knowledge of both parties is equal, and nothing is done by the one to mislead the other. *Chaffee*, 57 S.C. at 518, 35 S.E. at 802. We find no evidence that the City had superior knowledge or that it misled the Helsels regarding the public nature of the street end.

The City has informed this Court that the issue it raised on cross-appeal now is moot, and we therefore express no opinion as to the merits of the City's exception. Accordingly, the order of the trial judge is

Affirmed.

GREGORY, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.