523 S.E.2d 486

**Richard J. VAN BLARCUM and Deborah S. Van Blarcum, Appellants/Respondents,**

v.

**CITY OF NORTH MYRTLE BEACH, Respondent/Appellant.**

**No. 3051.**

Court of Appeals of South Carolina.

Heard Sept. 9, 1999.
Decided Oct. 18, 1999.

Howell V. Bellamy, Jr., and Douglas M. Zayicek, both of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, of Myrtle Beach, for appellants/respondents.

J. Jackson Thomas, of Myrtle Beach; and J. Gregory Hembree, of N. Myrtle Beach, for respondent/appellant.

GOOLSBY, Judge:

This case involves a dispute between the City of North Myrtle Beach and Richard and Deborah Van Blarcum over the ownership and use of three areas of property adjoining the Van Blarcums' beachfront motel and residence. The master-in-equity found the Van Blarcums held "record title" to a beach area that lies seaward of their lots down to the high-

water mark of the Atlantic Ocean, but found the area to have been dedicated and thus subject to the public's right to use and enjoy a portion of it and to the City's right to maintain that portion. He also found the City had accepted a dedication of and held title to two five-foot rights-of-way that extend to the Atlantic Ocean along the "east" and "west" boundaries of the two lots on which the motel sits, and he found these rights-of-way subject to the rights of the public to use them as walkways and as driveways but not for vehicular parking. In an amended order, the master prohibited the parties from obstructing the walkways and limited the number of signs the City could place to identify the areas as public walkways. The Van Blarcums and the City filed cross-appeals. The central issue involved in the Van Blarcums' appeal concerns dedication while that involved in the City's appeal concerns the extent to which the City may maintain and control the two walkways. We affirm.

I.

The Van Blarcums argue the master erred in granting the public the right to use the beach area on their property and in granting the City the right to maintain that area because the evidence of dedication was insufficient.

Sometime before March 1937, Charles Ingram bought fifty acres of beachfront property and developed a subdivision known as Ingram Beach. In March and April 1937, A.L. Ervin, C.E., surveyed the property and prepared a plat of the subdivision. The plat, which was recorded, delineated the subdivision's streets, rights-of-way, and lots and showed the high-water mark and low-water mark with reference to the lots. Ervin's plat divided Ingram Beach into Blocks A, B, C, D, and E, and further subdivided each block into numbered lots.

This case involves Lots 8, 9, and 10 of Block A. Ervin's plat shows each of these lots as adjoining Ocean Drive (now Ocean Boulevard) and fronting on the Atlantic Ocean and describes each of these lots as 52½ feet wide and 125 feet deep. The area in dispute lies between the original seaward line of Lots 8, 9, and 10 and the high-water mark as shown on Ervin's plat.

Mary Gray Davis acquired Lots 9 and 10 on September 21, 1964, and built the Windjammer Motel on the property. On July 12, 1965, she deeded the property to Windjammer Motel, Inc. The latter deeded the property to the Van Blarcums on September 3, 1992.

In 1995, the City began a beach renourishment project. After surveying the Van Blarcums' property, the City asked the Van Blarcums for an easement to allow the City to place sand on a portion of their property. The Van Blarcums refused the request. Their refusal prompted the City to assert the Van Blarcums did not actually own the property on which it wanted to place the sand. This assertion apparently led the Van Blarcums to obtain quitclaim deeds from Ingram's devisees to any property from the seaward-side lot lines of Lots 9 and 10 to the high-water mark of the Atlantic Ocean. The Ingram devisees gave a similar quitclaim as to Lot 8, property the Van Blarcums later acquired.

The determination of whether property has been dedicated to the public is an action in equity. *State v. Beach Co.*, 271 S.C. 425, 248 S.E.2d 115 (1978); *Mack v. Edens*, 320 S.C. 236, 464 S.E.2d 124 (Ct.App.1995). Because this is an action in equity referred to a master for final judgment, we may find facts in accordance with our own view of the preponderance of the evidence. *Thomas v. Mitchell*, 287 S.C. 35, 336 S.E.2d 154 (Ct.App.1985). We, however, are not required to ignore the findings of the trial judge, who heard and saw the witnesses. *Id.* at 38, 336 S.E.2d at 155.

Proof of dedication must be strict, cogent, and convincing. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). The party seeking to establish dedication must prove two elements: (1) the owner must express in a positive and an unmistakable manner the intention to dedicate his property to public use, and (2) there must be, within a reasonable time, an express or implied public acceptance of the property offered for dedication. *Tupper*, 326 S.C. at 326, 487 S.E.2d at 191–92; *Helsel v. City of North Myrtle Beach*, 307 S.C. 24, 413 S.E.2d 821 (1992).

A recorded plat may be sufficient to disclose a landowner's intent to dedicate property to public use. *McAl-*

*lister v. Smiley,* 301 S.C. 10, 15, 389 S.E.2d 857, 861 (1990) (Toal, J., dissenting). If a landowner subdivides and plats an area of land into lots and streets and then sells lots with reference to the plat, the owner manifests an intent to dedicate those common areas to be used by both the purchasers and the public, absent evidence of a contrary intent. *Corbin v. Cherokee Realty,* 229 S.C. 16, 91 S.E.2d 542 (1956); *cf. Home Sales, Inc. v. North Myrtle Beach,* 299 S.C. 70, 382 S.E.2d 463 (Ct.App.1989) (legend on subdivision plat, which gave developers discretion whether or not to open avenues, did not dedicate avenues).

■  According to Ervin's plat, there is approximately 90 feet between the seaward lot lines of Lots 8, 9, and 10 and the high-water mark of the Atlantic Ocean. Our supreme court has viewed an almost identical plat configuration as indicative of an owner's intent to dedicate a similarly defined area to the public. *See Epps v. Freeman,* 261 S.C. 375, 377, 200 S.E.2d 235, 236 (1973) ("Although it is not so marked or designated on the plat, the intervening beach area was, by the inauguration of the plan, the recordation of the plat and the sale of lots, dedicated to the lot owners and public for common enjoyment."); *cf. Hill v. Beach Co.,* 279 S.C. 313, 306 S.E.2d 604 (1983) (where plat designated the high-water mark but failed to designate a seaward subdivision boundary, the court found the developer intended the property line to extend to the high-water mark). We so view the area in question here and hold Ingram, the original developer, unequivocally manifested an intent to offer the area to the use of the public upon the filing of Ervin's plat. *See* 23 Am.Jur.2d *Dedication* § 29, at 26 (1983) (a plat exhibited to purchasers is evidence of the existence and location of areas dedicated for public use).

■  Our inquiry does not stop here, however. After an owner expresses an intent to dedicate property to the public by a plat, the public must accept the dedication to make it complete. 23 Am.Jur.2d *Dedication* § 43, at 39. No formal acceptance by the public of an offer of dedication is necessary, and acceptance of the offer may be implied by the public's or public authority's continuously utilizing or maintaining the property in some fashion. *Tupper,* 326 S.C. at 326, 487 S.E.2d at 192; *see* 23 Am.Jur.2d *Dedication* § 51, at 44 (acceptance of

offer of dedication may be demonstrated in various ways, including a showing of public use).

Here, the evidence is sufficient to show that an offer by the owner to dedicate the area in question was accepted. Aside from any use by the public at large, the City maintained it, raked it, cleaned it, planted sea grass to protect its dunes, built dune crossovers and stairways upon it, and protected its users with lifeguard, public safety, and rescue services.

■ The Van Blarcums, however, maintain an acceptance of the owner's offer of dedication never occurred because they and their predecessors in title paid taxes assessed on the disputed property. The payment of taxes on disputed property is evidence contrary to the intent to dedicate property to the public. *Anderson v. Hemingway,* 269 S.C. 351, 237 S.E.2d 489 (1977). The assessment of taxes is but a factor in determining the question of whether an offer of dedication has been accepted and is not controlling. *Helsel,* 307 S.C. at 28, 413 S.E.2d at 821. If other evidence, as here, indicates a dedication and acceptance, the mere fact that the municipality continued to tax the property will not prevent the municipality from claiming it under a completed dedication. 23 Am.Jur.2d *Dedication* § 79, at 65.

There exists no evidence in the record that the Van Blarcums or any of their predecessors in title prior to this dispute objected to city improvements on the beach area, otherwise disputed the public's interest in the property, or notified the City they had paid taxes upon it. *See Chafee v. Aiken,* 57 S.C. 507, 35 S.E. 800 (1900) (because tax receipt did not show, on its face, that the street was included in the property upon which taxes were paid and there was no evidence the municipality had notice that the landowner paid taxes on the street, the municipality could not be estopped from asserting dedication of the street).

## II.

■ The City complains of the restrictions placed by the master on the City's authority over the walkways that adjoin Lots 9 and 10.

In his original order, the master held that "the City has record title to the ... walkways subject only to the rights of

the public, including the [Van Blarcums], to use the walkways for foot traffic to the beach and that access in and to the walkways should not be obstructed in any manner whatsoever." Thereafter, in an amended order, the master stated that, while "neither party shall place any obstructions within the walkways, including any posts, cars parked in the walkway, or the like," his order "should not be construed to prohibit or prevent incidental incursion of vehicular traffic into the walkways while in transit." His amended order also limited the number and locations of signs or other markers that could be placed on or at the walkways.

The City claims the master's amended order limits the discretionary authority that South Carolina Code Annotated section 5-7-30 (Supp.1998)[1] confers upon it as a municipality of the State to maintain and control public thoroughfares.

■ This issue, however, need not be addressed. Before the court of appeals can treat an issue, it must be both raised to and ruled on by the trial court. *Tupper*, 326 S.C. at 328 n. 7, 487 S.E.2d at 192 n. 7. Nowhere did the master explicitly treat the precise issue that the City now argues, *i.e.*, that a court, notwithstanding the cited statute, may allow vehicular traffic upon publicly-owned walkways and restrict the number and location of signs that can be placed upon the walkways. Indeed, the City in oral argument before this court conceded as much, stating that the master implicitly addressed the issue. But an implicit ruling will not suffice. *See Noisette v. Ismail*, 304 S.C. 56, 403 S.E.2d 122 (1991) (absent an explicit ruling on a party's argument, the issue raised by the argument is not properly before the court of appeals and should not be addressed).

**AFFIRMED.**

CONNOR, J., concurs.

ANDERSON, J., concurs in part and dissents in part in a separate opinion.

---

1. South Carolina Code Ann. § 5-7-30 (Supp.1998) provides "[e]ach municipality of the State ... may enact regulations ... and ordinances ... respecting any subject which appears to it necessary and proper for the security, general welfare, and convenience of the municipality...."

ANDERSON, Judge, (concurs in part and dissents in part):

I concur as to Issue I. However, I respectfully dissent as to the majority's holding with respect to Issue II.

The majority states the City claims the Master's amended order is violative of S.C.Code Ann. § 5–7–30 (Supp.1998). Apodictically, the City relied on the statute *and* the position asserted throughout this litigation, i.e., the walkways were *dedicated for public use.*

The elixir of this case is the issue relating to the City's and/or public's right to use walkways as an entrance and exit to the Atlantic Ocean (Grand Strand) in Horry County. The majority sidesteps that issue by ruling the City *only* relies upon § 5–7–30. I disagree.

Here, the issue was *ruled* on by the court. The issue was the right of the public to use the walkways. On reconsideration, the court *ruled* on the *same* issue again. The City, in argument to the Circuit judge and in oral argument before this Court, insisted it relied on the "dedication of right of way" issue *and* the statutory discretion position. The majority concludes the *ground* for the ruling is not preserved. I disagree.

To perfect dedication, two elements are required: (1) the owner must express in a positive and unmistakable manner the intention to dedicate his property to public use; and (2) there must be acceptance of such property by the public. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). Proof of dedication must be strict, cogent, and convincing. *Id.*

Adverting to the merits, there is no common law or statutory authority allowing a court to invade a public right of way created by dedication. This case is a paradigm of dedicatory endeavor flowing from the original owner's activities in filing a plat and creating a subdivision with streets and right of ways.

The landowner, Charles Ingram, subdivided his tract of land through a platting procedure using A.L. Ervin, a civil engineer. Ervin's plat depicts the five foot walkways and identifies them as public walkways. Additionally, the Van Blarcums used a plat at the time of their purchase which delineates the walkways with exactitude. Ingram's intent can be gleaned with

absolute accuracy from the subdividing and platting activity. Apodictically, Ingram's intent was to preserve forever the walkways on behalf of the public in general and the South Carolina citizenry in particular.

Applying *Tupper, supra,* to the case at bar, one comes to the adamantine conclusion that dedication of the walkways resulted from Ingram's activities and his clear intent. In regard to element two, the evidentiary record demonstrates with uncanny accuracy the public acceptance of the property offered for dedication.

I would *reverse* this part of the Master's order and reinstate the unfettered right of the City to mark the walkways on each side for *public use.*